Newton Oil & Manufacturing Co. *v.* T. J. Sessum et al.

[59 South. 9.]

1. Chancery Court. *Action. Misjoinder. Demurrer. Code* 1906, *section* 2256. *Constitution* 1890, *section* 147.

Where several complainants join in a bill in chancery seeking to recover damages and the statutory penalty provided in Code 1906, section 2256, for breach of separate guaranties, on separate sales by defendant, of fertilizers at different times, a demurrer to the bill should be sustained and the bill dismissed.

2. Same.

Neither the common law or equity courts have jurisdiction of the cause of action, where the rights and remedies of the complainants are entirely separate, independent and distinct, and in no court can they maintain a joint cause of action.

3. Same.

In such case there would be not only a misjoinder of parties but also a misjoinder of causes of action, and in such case Constitution 1890, section 147, has no application.

Appeal from the chancery court of Newton county. Hon. Sam Whitman, Jr., Chancellor.

Bill by T. J. Sessum and others against the Newton Oil & Manufacturing Company. From an order overruling a demurrer to the bill, defendant appeals.

The facts are fully stated in the opinion of the court.

*J. R. Byrd,* for appellant.

There will be no limit to the issues that will arise in this case. Each man's claim tried and determined by the chancellor separate and apart from all others. It can very readily be seen that the defense to one claim has no connection with or relation to the others.

That the court can and will go outside of the record and anticipate the various issues that will or might arise on the trial of the cause, judging from the nature and character of the transactions charged in the bill, is expressly held by the supreme court of the United States, in the case of *Hale* v. *Allison,* 188 U. S. Rep. 77, 47 L. Ed. 380.

The following is a sample of the reasoning on this proposition approved by that great court in the case of *Hale* v. *Allison,* supra.

"The facts surrounding the present case and the reasons for holding that they do not bring it within the principle of preventing a multiplicity of suits are so well stated in the opinion of McPherson district judge in this case (102 Fed. 790) that we quote the same. Speaking of the alleged conclusiveness of the Minnesota decree upon the question therein decided, the judge continued:

"Therefore, a different question arose for determination, namely, can the assessment be lawfully enforced against the individual charged therewith? And in this question the interest of each stockholder is separate and distinct. The bill asserts the conclusiveness of the Minnesota decree upon the defendants, so far as the necessity for the assessment and the amount charged against each stockholder or concern. . . . It is clear that two classes of questions remain to be decided the first is

whether a given stockholder was even liable as such; the second is whether, if he were originally liable, his liability has ceased, either in whole or in part. Manifestly, as it seems to me, the defendants have no common interest in the question, or in the relief sought by the receiver against each defendant. The receiver's cause of action against each defendant is, no doubt similar to his cause of action against every other, but this is only part of the matter. The real issue, the actual dispute, can only be known after each defendant has set up his defense, and defenses may vary so widely that no two controversies may be exactly, or even nearly, alike. If, as is sure to happen, differing defenses are put in by different defendants the bill evidently becomes a single proceeding only in name. In reality it is a congeries of suits with little relation to each other, except there is a common plaintiff who has similar claims against many persons. But each of these persons became liable, if at all, by reason of a contract entered into by himself alone, with the making of which his codefendant had nothing whatever to do. So he continues to be liable, if at all, because he himself, and not they, has done nothing to discharge the liability. Suppose A to aver that this signature to the subscription list was a forgery; what connection has that averment with B's contention that his subscription was made by an agent who had exceeded his powers; or with B's defense that his subscription was obtained by fraudulent representations; or with D's defense that he has discharged his full liability by voluntary payment to the receiver himself; or with E's defense that he paid to a creditor of the corporation a larger sum than is now demanded? These are separate and individual defenses, having nothing in common; and upon each the defendant setting it up is entitled to a trial by jury, although it may be somewhat troublesome and expensive to award him his constitutional right. But even if the ground of the diminished trouble and expen-

ses may sometime be sufficient, I should still be much inclined to hesitate before I conceded the superiority of the equitable remedy in the present case. Such a bill as is now before the court is certain to be the beginning of a long and expensive litigation. The hearings are sure to be protracted. Several, perhaps many, attorneys will be concerned, whose convenience must be consulted. The testimony will soon grow to be voluminous. The expense of printing will be large. The cost of witnesses will not in any degree be diminished, and, if some docket cost may be escaped, this is probably the only pecuniary advantage to be enjoyed by this cumbersome bill over separate actions in law.''

The Supreme Court of the United States after quoting the above made this observation on it: ''We are in accord with the views thus expressed, and we, therefore, must deny the jurisdiction of equity, so far as it is based upon the asserted prevention of a multiplicity of suits.''

The case just cited, and the case at bar are on allfours on the proposition here under discussion. The defenses that the defendant will interpose to the claim or suit of each complainant are altogether different from the defenses it will interpose to the claim or suit of the other complainants. Each will be separate and independent of the other. There is absolutely no community of interests in either the law or the facts.

*E. B. Cooper,* for appellant.

The case of *Tribette* v. *Railroad Co.,* 12 So. 32, is a leading case on the subject of the equity of a prevention of a multiplicity of suits. It has had as much influence and has been as conspicuous, in the decision of courts dealing with these principles as any case in our reports. The rule in this case requires a common right or title or a community of interest in the subject matter on the part of those seeking equitable aid except where there are equities independent of the equity of a prevention

of a multiplicity of suits. Pomeroy's rule requires no more than a community of interest in the questions of law and of fact.

The Tennessee supreme court in a proper case considers the question and approves the doctrine of the Tribette case and cites it with approval. *Ducktown Sulthur, Copper and Iron Co.* v. *Fain,* 109 Tenn. 56, 70 S. W. 813.

The Indiana supreme court in the case of *Vandalia Coal Co.* v. *Lawson,* 87 N. E. 47, after a thorough discussion of the conflict, repudiates the doctrine of Pomeroy and expressly approves the Tribette case.

Bliss on Code Pleading, sec. 76, expressly approves the Tribette case. Beach on Injunctions, sec. 543, approves the Tribette case. High on Injunctions, sec. 65-a, approves the Tribette case. Story on Equity Jurisprudence, sec. 854, Adams on Equity, sec. 199, approves the doctrine of the Tribette case. In fact it is said in a recent case from the supreme court of Alabama, *Southern Steel Co.* v. *Hopkins,* 57 So. 11, relative to this case:

"It is thus made to appear that all of the text-writers who have written since the Tribette case have followed it and revised their texts accordingly. Even Mr. Pomeroy, though he speaks of the case as sensational in many of its statements, says, 'It has been so frequently reprinted that it appears to call for special notice,' and he proceeds to quote from it and to comment adversely upon it as to those statements which he calls sensational; yet the effect of his text and notes, as revised, is to say that the case was correctly decided. See section 25½ and note, 1 Pomeroy's Equity Jurisprudence, p. 425."

The supreme court of Alabama at first upheld the doctrine of the Tribette case. Later, this was repudiated in the opinion of Tyson in the case of *Southern Steel Co.* v. *Hopkins.* The same court, with three of the judges who participated in the case of *Southern Steel Co.* v. *Hopkins,* now repudiate the former opinion in the iden-

tical case and re-establish the doctrine of the Tribette case. See *Southern Steel Co.* v. *Hopkins,* 57 So. 11. This case contains excerpts from a number of authorities. The exhaustive note to the case of *Southern Steel Co.* v. *Hopkins,* 20 L. R. A. (N. S.), well shows the extent and influence of the Tribette case and its discussion is of immense value at this juncture. We submit that the Whitlock case necessarily repudiated the doctrine of the Tribette case. In the case of *Hightower* v. *M. J. & K. C. R. R.,* 83 Miss. 708, 36 So. 82, the Pomeroy doctrine was expressly approved. We submit that this case could have well been decided under the Tribette case in as much as there was an independent equity, the cancellation of the notes, and each of the complainants in that bill could have proceeded separately in a court of equity and they could have united to make common cause against a common adversary.

We cite these authorities and ask a reconsideration of the rule with all respect and deference. If this court should re-establish the Tribette doctrine, this bill must fall. There is no pretense of a community of right or title or a community of interest in the subject-matter on the part of appellee. There is no other ground for equitable interference than the prevention of a multiplicity of suits.

*W. C. Eastland* and *Flowers, Alexander & Whitfield,* for appellee.

In the case at bar the question is should these parties try their cases one at a time in a court of law or all together in a court of equity? Which has juridiction?

If the chancery court has jurisdiction at all it is to prevent multiplicity of suits. The manner in which the suits are brought gives the chancery court jurisdiction if it has any. The issue between the two forums must involve the procedure in the respective courts. The chancery court claims the right to take cognizance of the con-

troversies as they are presented to it by this bill filed by all these appellees; the circuit court claims exclusive jurisdiction of the controversies presented one at a time. This makes up the issue. This is the issue presented here now. It is the one argued by counsel to this court. It is the issue tried in the lower court. The defendant contended below that the complainants must sue in a law court one at a time and that no case is made for equity to entertain. We tried this issue below and we are trying it here.

We submit here to this court the following:

Suppose this appellant, instead of appealing from the decree of the chancellor overruling the demurrer, had proceeded to trial on the merits and decree had been made against it according to each of the complainants the amount claimed by him, and from that decree the appeal had been prosecuted; would this court reverse if satisfied that justice had been done?

We respectfully submit to the court that there is nothing involved here but a question of jurisdiction. The lawyers interested have so understood it up to date. Under the well settled construction of section 147 the decree of the chancellor is not reversible even though this court should be of the opinion that the demurrer should have been sustained. The case can best be tried in the chancery court. From the allegations of this bill it appears that this fertilizer was shipped to Forest and was distributed among these purchasers, all having bought the very same kind and having paid the same prices and made the same contracts. One trial of the question as to whether the fertilizer was deficient will suffice for all of the claims. It is cheaper for the defendant. The objection to the chancery proceeding is made only in an effort to defeat the claims altogether. The appellant would not desire to go to the justice court and to the circuit courts and defend all of these suits one at a time. The numerous questions suggested by counsel for appellant as being

possible to arise in the future are not raised by the pleadings herein and not suggested by anything in the record. The case we have to deal with is that the Newton Oil & Manufacturing Company shipped a lot of its fertilizer to its agent at Forest and he sold it to numerous persons and it was all deficient in the same particular. It will be necessary only for us to prove that all that was purchased by these several claimants was covered by the one analysis and that it was all deficient in the same particular. What we are suing for is four (4) times the purchase price agreed to be paid. We are not making any claim for damages done to crops. While that is mentioned it is not mentioned in such definite way as to permit a recovery therefor to be had.

Cook, J., delivered the opinion of the court.

This case is the case of *Williamson* v. *Telephone Co.,* 57 South. 559, with the parties in interest transposed. in the Williamson case the telephone company was threatened with a multitude of suits, while in the instant case a multitude of parties claiming damages against the Newton Oil & Manufacturing Company filed their joint bill in the chancery court against appellant to avoid a multiplicity of suits. The bill alleges that appellant sold to each of the complainants, at different times, certain fertilizers guaranteed to contain certain elements necessary to the fertilization of the soil, that the fertilizer did not come up to the guaranty, and each complainant prayed for damages in varying amounts, and also for the penalty imposed by section 2256 of the Code of 1906. To this a demurrer was interposed, and overruled.

The chancellor should have sustained the demurrer and dismissed the bill. It is contended by appellees that, the chancellor having assumed jurisdiction of the case, although it may be conceded that the equity court did not have jurisdiction, this court should not reverse the chancellor, citing section 147 of the Constitution in sup-

port of their position. The decision of the chancellor was not an "error or mistake as to whether the cause in which it was rendered was of equity or common-law jurisdiction." Neither the common-law or equity court had jurisdiction of the cause of action as presented by the bill, and a demurrer should have been sustained in either court. The rights and remedies of the complainants were entirely separate, independent, and distinct, and in no court could they maintain a joint cause of action. This is more than a misjoinder of parties. It also is a misjoinder of causes of action.

If one of the complainants had filed his bill in the chancery court, alleging the same cause of action, and praying for the same relief sought by this bill, and the court had assumed jurisdiction in mistake of its jurisdiction, then we would have a case which properly belonged to a law court, and this court would not reverse for the mistake, if this should be the only error in the record. Indeed, the point made by appellees has been decided by this court. We do not think, with counsel, that it was unnecessary to decide this question in the decision to which reference is made; but it was directly before the court, then as now, and the court then said: "No question as to mistake of jurisdiction between courts of law and chancery, within the contemplation of section 147 of our Constitution, arises in this case; for if we had only one forum, armed with full power to administer all remedial justice, joinder of all these parties in one action would not be admissible. Bliss on Code Pleading. This author says, in section 76: 'Two or more owners of mills propelled by water are interested in preventing an obstruction above that shall interfere with the downflow of the water, and may unite to restrain or abate it as a nuisance; but they cannot, hence, unite in an action for damages, for, as to the injury suffered, there is no community of interest. There is no more a common interest than though a carrier had, at one time, carelessly

destroyed property belonging to different persons, or the lives of different passengers.' " *Tribette* v. *Railroad Co.,* 70 Miss. 192, 12 South. 34, 19 L. R. A. 660, 355 Am. St. Rep. 642.

*Reversed, and bill dismissed.*