## MARK H. CREHAN, Appellant, *v.* RALPH G. MEGARGEL et al., Respondents.

Partnership — trust — when parties to trust agreement providing for payment of moneys to trustee for investment by him as special partner not "persons interested" so as to become liable as general partners under section 24 of Partnership Act — trust agreement not invalid as violative of statute forbidding suspension of ownership for fixed term — plaintiff without standing to attack trust agreement — if trust agreement void relationship of principal and agent not established — demurrer to complaint seeking to hold subscribers personally liable as partners by force of the statute for an alleged breach of contract by the partnership properly sustained — demurrer on part of trustee properly overruled — demurrer to causes of action charging all of defendants as general partners overruled — recovery in foreign state against other partners does not defeat action — common-law rule of merger not applicable to those beyond jurisdiction of court.

1. Parties to a written agreement providing for the payment by them of certain sums of money to a trustee under a trust by which he was to contribute said moneys, in his own name, as his capital in a special partnership to be organized, and distribute any profits to his *cestuis que trust* but who, on the face of the written agreement, are wholly disconnected from and utter strangers to the partnership, save that in case of the death of their trustee and the dissolution of the firm they are entitled to receive from the firm the residue of the moneys to which their trustee would be entitled if living, are not contributors of capital to the partnership in the manner contemplated by the Partnership Law as necessary to establish the status of a special partner and are not "persons interested" within the provision of section 34 of that act making liable as general partners "the persons interested therein" if any false statement be made in the certificate or affidavit essential to the formation of such a partnership. Nor are they contributors of capital in a manner which, while not such as specified by the words of the statute, nevertheless comes within its spirit and purpose. Nor does this view result in any defeat of a public policy as evidenced in the statute relating to limited partnerships.

2. A provision in the trust agreement whereby the subscribers, disconnected from the members of the partnership, agreed that if the

partnership was dissolved by the death of their trustee they would enter into negotiations for the formation of a new partnership to which, if the negotiations were successful; they would contribute as capital the moneys which they received upon the dissolution of the old partnership, is too contingent and uncertain to amount to an agreement to suspend the ownership of property for a fixed period of years, and, therefore, violate section 11 of the Personal Property Law.

3. The plaintiff, moreover, who is not a party to and has no interest in the property which is subject to the trust, and is not seeking to enforce any lien thereon which is obstructed by the trust agreement, or to defend himself against any attack which is based upon the trust agreement and is an utter stranger to the entire proceeding, has no standing to attack the trust agreement.

4. In any event, the subscribers having placed their money in the hands of the trustee solely and exclusively under the authority contained in the trust agreement, if said agreement be held void, the relationship of principal and agent would not be established in respect of the contributions. The unlawful trustee would not be turned into a lawful agent.

5. Demurrers, therefore, to causes of action alleged in the complaint seeking to hold such subscribers liable as members of the copartnership by force of the statute (Partnership Law, § 34), for the latter's alleged breach of a contract, are properly sustained as to the subscribers. A demurrer to such causes of action on the part of the trustee is properly overruled.

6. The complaint, however, states a good cause of action against all of the defendants under two of its counts wherein it is alleged that the defendants were general partners, and the fact that a judgment has been recovered by the plaintiff in a foreign state upon the same causes of action here involved against several other members of the firm does not defeat this action on the ground of merger where it appears that these defendants were not joined because non-residents and not subject to process in said state. The common-law rule of merger does not apply in favor of those who were beyond the jurisdiction of the court which rendered it. Furthermore, the plaintiff's right to proceed is additionally secured by section 1946 of the Code of Civil Procedure. (*Buckley* v. *Bramhall,* 24 How. Pr. 455, distinguished.)

*Crehan* v. *Megargel,* 199 App. Div. 649, modified.

(Argued June 5, 1922; decided July 12, 1922.)

APPEAL from a judgment entered February 4, 1922, upon an order of the Appellate Division of the Supreme

Court in the first judicial department, which reversed an order of Special Term overruling demurrers to the complaint and directed a dismissal of said complaint.

*Sydney A. Wrightington* and *J. Boyce Smith, Jr.,* for appellant. · The cause of action against these defendants has not been merged in the judgment against the general partners so as to bar the present action. (*Brown* v. *Birdsall,* 29 Barb. 549; *Bradley Eng. Co.* v. *Heyburn,* 56 Wash. 628; *Yoho* v. *McGovern,* 42 Ohio St. 11; *Rand* v. *Nutter,* 56 Me. 339; *Third .Nat. Bank* v. *Graham,* 174 App. Div. 503; *Tibbitts* v. *Shapleigh,* 60 N. H. 487; *Beck* v. *Wacker,* 76 Fed. Rep. 10; *Odoni* v. *Denny,* 16 Gray, 114.) Assuming the trust to be valid the defendant subscribers are " persons interested " in the firm of Megargel & Co., and hence liable as general partners. (Perry on Trusts, § 437b; *Thomassen* v. *Van Wyngarden,* 65 Ia. 687; *Bushong* v. *Taylor,* 82 Mo. 660; *Williams* v. *Milton,* 215 Miss. 1; *Ames* v. *Downing,* 1 Bradf. 321; *Hibbs* v. *Brown,* 190 N. Y. 167.) The complaint is sufficient in that it alleges in the first and third causes of action facts from which it is apparent that Ralph G. Megargel was not the *bona fide* special partner and the special capital was not actually and in good faith contributed by him, but that the defendant subscribers were the actual special partners and actually contributed the capital, and the trust agreement was simply a secret device to evade the law. ( *Kellner* v. *Kener,* 166 N. Y. Supp. 896; *Manny* v. *Burke,* 174 App. Div. 654.) The defendant subscribers, the special partner and the seven general partners were all joint parties to the organization of the limited partnership. (*Fisher Textile Co.* v. *Perkins,* 100 App. Div. 19; *Moorehead* v. *Seymour,* 77 N. Y. Supp. 1050.) The statute cannot reasonably be construed as meaning by " persons interested " only those who would be liable as partners at common law. (*Freedman's Saving & Trust Co.* v. *Earle,* 110 U. S. 710;

*Brown* v. *Fletcher*, 235 U. S. 589; *Matter of Brown*, 60 Misc. Rep. 628; *Jarmulowsky* v. *Susskind*, 53 Misc. Rep. 603; *F. A. Building Co.* v. *Kernochan*, 221 N. Y. 370; *Nestell* v. *Hart*, 202 N. Y. 280; *Goodhue* v. *Pennell*, 164 App. Div. 821.) The trust is illegal under the New York law because the absolute ownership of personal property is suspended thereby for a period not measured by two lives in being and this makes the defendant subscribers persons interested beyond all question. (*Everitt* v. *Everitt*, 29 N. Y. 39; *Smith* v. *Edwards*, 88 N. Y. 92; *Underwood* v. *Curtis*, 127 N. Y. 523; *Kalish* v. *Kalish*, 166 N. Y. 368; *Matter of Hitchcock*, 222 N. Y. 57; *Matter of Snyder's Estate*, 21 N. Y. Supp. 430; *Woolley* v. *Hutchins*, 114 Misc. Rep. 11; *Allen* v. *Litchard*, 93 Misc. Rep. 197; *Freeman* v. *Hanna*, 178 App. Div. 630; *Rosenstein* v. *Rosenstein*, 103 Misc. Rep. 1.)

*Clinton J. Ruch, N. J. Herrick* and *John M. Lowrie* for Ralph G. Megargel et al., respondents. A false statement in the certificate or affidavit filed on the formation of a limited partnership, or a failure to make proper publication, does not impose a new penalty of general partnership liability unknown to the common law but merely removes the protection of the Limited Partnership Law leaving the parties subject to their common-law liabilities. The words " persons interested therein " as used in section 34 include, therefore, merely those persons who would be liable as general partners at common law. (*White* v. *Eiseman*, 134 N. Y. 102; *President* v. *Laimbeer*, 108 N. Y. 579; *Durant* v. *Abendroth*, 8 J. & S. 53; 69 N. Y. 148; *Loomis* v. *Hoyt*, 20 J. & S. 287; *Sharp* v. *Hutchinson*, 100 N. Y. 533; *Abendroth* v. *Van Dolsen*, 131 U. S. 66.) The relation between the defendant subscribers and the partnership of Megargel & Co. was not such as would render the defendant subscribers liable as general partners under the common law. They were not, therefore, " persons interested " in

1922.] Points of counsel. [234,N. Y. 67]

the partnership within the meaning of section 34 and the complaint fails to state a cause of action against them. (*R. I. Trust Co.* v. *Copeland*, 39 R. I. 193; *Mayo* v. *Moritz*, 151 Mass. 481; *Williams* v. *Milton*, 215 Mass. 1; *Smith* v. *Anderson*, 15 Ch. Div. 247; *Home Lumber Co.* v. *Hopkins*, 190 Pac. Rep. 601; *Wells Stove Co.* v. *Grover*, 7 N. D. 460; *Burnett* v. *Snyder*, 76 N. Y. 344; *Rockafellow* v. *Miller*, 107 N. Y. 507; *Sanger* v. *French*, 157 N. Y. 213; *Reynolds* v. *Hicks*, 19 Ind. 113.) The trust indenture did not unlawfully suspend the ownership of the trust property and the trust is, therefore, valid. (*Mallory* v. *Thomas*, 71 Kans. 562; *First Nat. Bank* v. *Nat. Broadway Bank*, 156 N. Y. 459; *Hardt* v. *Levy*, 72 Hun, 232; *Wells* v. *Squires*, 117 App. Div. 502; 191 N. Y. 529; *Hammerstein* v. *Eq. .Trust Co.*, 156 App. Div. 644; *Matter of Trumble*, 199 N. Y. 454; *Matter of Stanton*, 107 Misc. Rep. 326; *Howe* v. *Morse*, 174 Mass. 491.) The entire complaint and each alleged cause of action are demurrable for failing to state facts constituting a cause of action in that it appears on the face of the complaint and of each alleged cause of action that the cause of action sued upon has been merged in a prior judgment. (*Calvo* v. *Davies*, 73 N. Y. 211; *Ranger* v. *Thalman*, 65 App. Div. 5; *Wilson* v. *L. & N. R. R. Co.*, 103 App. Div. 203; *Wright .Steam Engine Works* v. *McAdams*, 113 App. Div. 872; *Kelley* v. *Smith Co.*, 150 App. Div. 428; *Van Cleaf* v. *Burns*, 118 N. Y. 549; *Penny* v. *Martin*, 4 Johns. Ch. 566; *Robertson* v. *Smith*, 18 Johns. 459; *Olmstead* v. *Webster*, 8 N. Y. 413; *Mason* v. *Eldred*, 73 U. S. 231; Black on Judgments, § 776; *Iwanaga* v. *Hagopian*, 179 Pac. Rep. 523.)

*Richard T. Greene* and *Daniel S. Murphy* for respondents. These respondents were not partners in the New York partnership of Megargel & Co., and, therefore, were not " persons interested therein " under section 34 of the Partnership Law of New York. (*Marvin* v.

*Brooks,* 94 N. Y. 71; *Slayback* v. *Raymond,* 93 App. Div. 326; *Matter of Olmstead,* 52 App. Div. 515; 164 N. Y. 571; *Squire* v. *Ordemann,* 194 N. Y. 394; *Warren* v. *Union Bank of Rochester,* 157 N. Y. 259; *Steele* v. *Leopold,* 135 App. Div. 247; 201 N. Y. 518; *Tucker* v. *Weeks,* 177 App. Div. 158, 160; Partnership Law, § 3; *White* v. *Eiseman,* 134 N. Y. 101; *Sharp* v. *Hutchinson,* 100 N. Y. 533; *Loomis* v. *Hoyt,* 20 J. & S. 287; *Haviland* v. *Chace,* 39 Barb. 283; *Bell* v. *Merrifield,* 28 Hun, 219; *Hotopp* v. *Huber,* 160 N. Y. 524; *F. A. Bank* v. *Colgate,* 120 N. Y. 381; *Columbia Bank* v. *Berolzheimer,* 33 App. Div. 235; *Buck* v. *Alley,* 145 N. Y. 488.) The plan adopted by the special partner as a means of raising the funds with which to make his contribution of special capital was not an evasion of the statute. (Partnership Law, § 30; *Lawrence* v. *Merrifield,* 10 J. & S. 36; 73 N. Y. 590; *Webster* v. *Lanum,* 137 Fed. Rep. 376; *Patterson* v. *Youngs,* 154 App. Div. 536.) Plaintiff's cause of action is merged in the Massachusetts judgment. (Freeman on Judgments, § 575; Black on Judgments, §§ 860, 861; *Suydam* v. *Barber,* 18 N. Y. 468; *C. & A. R. R. Co.* v. *Wiggins Ferry Co.,* 108 U. S. 18; *Rigney* v. *Rigney,* 127 N. Y. 408; *Werner* v. *Pelletier,* 148 App. Div. 137; *Ruse* v. *M. B. Life Ins. Co.,* 23 N. Y. 516; *Southworth* v. *Morgan,* 205 N. Y. 293; *I. T. B. Co.* v. *Connelly,* 206 N. Y. 188; *Robertson* v. *Smith,* 18 Johns. 459; *Candee* v. *Smith,* 93 N. Y. 349; *Besley* v. *Palmer,* 1 Hill, 482; *Olmstead* v. *Webster,* 8 N. Y. 413.)

HISCOCK, Ch. J. This action is brought against defendants as alleged members of the firm of Megargel & Company to recover upwards of $500,000 damages for breach of contract made by said copartnership in the state of Massachusetts to carry out certain stock transactions for plaintiff. The complaint sets forth four separate causes of action each one dealing in different form with the same transactions and alleged defaults,

1922.] Opinion, per HISCOCK, Ch. J. [234 N. Y. 67]

and each is demurred to by every defendant on various grounds including the one that it does not state facts sufficient to establish any liability. The latter ground of demurrer is the only one which we deem it necessary to consider and in this connection we shall not review in detail all of the allegations of the complaint, for their sufficiency as setting forth a cause of action against the defendants of the character indicated is so clear except at two points that it is unnecessary to do this. We shall confine ourselves to outlining those allegations which present the interesting points in the case which require discussion and it will be assumed that the complaint in other respects is sufficient under its allegations to set forth a cause of action.

In two of the causes of action it is alleged in effect that the present defendants, together with other persons, were general members of the copartnership of Megargel & Company, which committed the breach of contract and caused plaintiff the damages as alleged in the complaint; also that before the commencement of this action plaintiff brought an action against such other persons in the state of Massachusetts and there recovered judgment against them for the same causes alleged in this action; that the present defendants were not joined in that action because they were non-residents of the state of Massachusetts and were beyond the reach of its process. The question to be discussed in connection with these causes of action is the one whether said judgment in Massachusetts operated to merge any cause of action against the present defendants and bar this action.

The other two counts, containing the same allegations concerning the Massachusetts judgment, attempt to set forth a cause of action against the defendants on the theory that through failure to comply with the statutes of this state governing the organization of limited partnerships, they have become liable as general partners in the copartnership of Megargel & Company. These alle-

gations are to the effect that the attempt was made in this state to organize said limited copartnership with the defendant Ralph Megargel as a special partner; that the other defendants really furnished the capital which he nominally contributed as such special partner; that the certificate and affidavit made and filed as required in the case of the organization of a limited partnership were not sufficient or truthful and that, therefore, said other defendants became subject to the penalty imposed by section 34 of the Partnership Law (Cons. Laws, ch. 39) which provides that " if any false statement be made in any such certificate or affidavit, made either upon the formation or renewal or continuance * * * of such partnership * * * the persons interested therein shall all be liable as general partners." The controlling question here is the one whether defendants were " persons interested " and thus became liable as members of the copartnership in the manner claimed and we shall consider first the two counts presenting this question.

The arrangement under which the other defendants furnished to Megargel the money which he contributed to the limited partnership was set forth in a written agreement, and while the complaint contains certain allegations to the effect that said arrangement was invalid and an unlawful and ineffectual device to evade the law regulating the formation of limited partnerships, and that these defendants and not Megargel contributed the capital and became interested in the copartnership, these allegations as made are the statements of mere legal conclusions and the sufficiency of plaintiff's complaint is to be tested by the agreement itself, which is not effectively contradicted, altered or condemned, if otherwise valid, by any of said allegations. We, therefore, turn to it for the purpose of determining whether under it defendants, other than Megargel, became " persons interested " in the partnership so as to become liable as general partners when there was failure to comply

with the statute governing the organization of limited partnerships.

The agreement is too long to be quoted or even to be summarized except in the briefest manner possible, having in view the controlling features. It provided for the payment by the other parties, who included these defendants, of certain sums of money to Megargel under a trust by which he was to contribute said moneys as his capital in a special partnership to be organized. *First*, as between him and the other members of said proposed partnership said moneys when received were to be contributed " in his own name and as his sole and individual special capital " to the partnership. He and the moneys so contributed were in all respects to be subject to the provisions of the partnership agreement which was annexed to the trust agreement and to all laws governing such a partnership, and the subscribers (these defendants) were to " have no right of accounting or other rights whatsoever against the said partnership * * *," but were " in all respects (to) be strangers thereto," and " as regards the trust property and estate or any of the rights and interests guaranteed " they should " look only to the party of the second part (Megargel) or his representatives," except that in the event a dissolution of the partnership should be caused by the death of Megargel and the consequent termination of the trust created the subscribers were entitled to receive from the survivors of the partnership the amount of special capital that might remain after final liquidation of the business thereof. *Second*, as between Megargel and the subscribers (defendants) the relation of trustee and *cestui que trust* was created. Megargel on payment to him of the respective amounts subscribed was to issue receipts to the several subscribers of which receipts a registry and record were to be kept. " Upon the receipt by him of any interest or profits to which he might (may) be entitled as special partner as aforesaid "

the same forthwith were to be distributed through the agency of a trust company amongst the registered holders of said receipts. Various provisions were made for protecting and safeguarding the relations between Megargel and the subscribers but all of these were based upon a relationship of the copartnership solely with Megargel as special partner and none of them in any manner qualified that exclusive relationship or brought the subscribers into the slightest relationship with the copartnership or the members thereof other than Megargel or gave them any voice in or supervision over the affairs of said copartnership.

It was primarily provided that this relation and condition between Megargel and the subscribers were to continue for five years, but the further provision was made between the subscribers that if it should be terminated by the death of Megargel within that time, on the consent of the surviving members of the partnership and the agreement of not less than 51 per centum in amount of the subscribers a new limited or special partnership might be formed with a new special partner.

For the purpose of establishing that under this agreement the subscribers became " interested " in the partnership plaintiff seeks to bring to his aid two different theories of this agreement — one that it is a valid instrument as between the parties to be construed as it is written, the other that it is invalid as providing for an undue suspension of the ownership of the property thereby covered.

Pursuing the first theory the basis of plaintiff's claim is the provision in the Partnership Law relating to limited partnerships already referred to and which provides that if any false statement be made in the certificate or affidavit essential to the formation of such a partnership " the persons interested therein shall all be liable as general partners." Then planting himself upon this provision he says " the essential claim    *    *    *    in this

case is that these defendants are the ones who actually contributed the special capital to the partnership of Megargel & Company " and each of said defendants " had a legal interest in said alleged limited partnership as a special partner therein at the time of its attempted formation." Thus the fundamental question becomes one of interpretation of the words " persons interested," in the statute just quoted, as a means of reaching the decision whether these defendants were such persons interested and who, therefore, became liable as general partners because of false certificates and false affidavits as alleged in the complaint.

In the consideration of defendants' liability counsel have discussed the somewhat general question whether the words " persons interested " in the statute should ever be interpreted to mean any one other than him who would be a general partner unless he secured a limited liability under the statutes by compliance with the terms thereof. Under the claims advanced by plaintiff we think that the controversy before us may be decided by the determination of what is perhaps a more concrete question. If the defendants other than Megargel did not contribute capital to the limited partnership in the sense claimed by plaintiff, then we fail to see how on any theory they were " persons interested " within a reasonable interpretation of the statute. We do not think that they did contribute special capital to the partnership in any such manner or with any such result as is claimed.

Clearly they did not contribute capital in the manner, under the conditions and with the results contemplated by the statute as necessary to establish the status of a special partner. The statute provides that one who desires to enter a copartnership as a special partner shall not only contribute in his own name a specific sum as capital but that he shall establish his status and relationship with the other individuals who are to be copartners by entering into an agreement with them

which is to be filed, recorded and published and in which, amongst other things, is to be stated the names of all the partners, including the special partner and the amount of capital which such special partner has contributed; that the name of the special partner shall be posted and that he shall have certain rights to examine into the state and progress of the partnership business and advise as to its management and to receive interest and profits on his investment. These defendants come within none of these provisions. As between them and the other members of the copartnership they made no contribution of capital, signed no partnership agreement and established no relationship with the copartnership, but were expressly debarred therefrom, and secured no benefit from such copartnership except as it might come in an indirect way through accountability of the special partner for the profits which he had received from the copartnership. On the face of the written agreement they were wholly disconnected from the partnership and utter strangers to its members, its affairs and its capital save in the one instance that in case of the death of their trustee and the dissolution of the firm they were entitled to receive from the firm the residue, if any, of the moneys to which their trustee would have been entitled if living. But this was the arrangement which equity would have enforced without any specific agreement and did not change the effect of their agreement.

Neither did they in our opinion contribute capital in a manner which, while not such as contemplated by the words of the statute, nevertheless came within its spirit and purpose. Of course we do not intend to negative the proposition made by the plaintiff that an arrangement might be made by one who was not named as special partner which would be so designed to evade the statute and give him the rights of that status that he would be held liable under the penalties of the law. Such was the basis of the decision in *Buckley* v. *Bramhall* (24 How.

Pr. 455), greatly relied on by the plaintiff. The court held in that case that the person sought to be charged with a general liability had attempted to evade the law by what was characterized a " flimsy contrivance to evade the statute " and, whether this interpretation of the facts was correct or not, that was the theory on which the defendant was held. No such situation is presented to us by the present complaint. While as we have stated there are various allegations of liability upon the part of the defendants under the statute these are conclusions based upon an interpretation of a written instrument and that instrument, read as it is written, establishes between the subscribers and the partnership no contribution of capital, no relation of partners and no contact with or supervision over partnership affairs. The trust is an insurmountable barrier raised between them and the partnership and separating them from an interest in its affairs, and it seems to us to be a valid arrangement and to come within the principles which have been approved both by eminent text writers and the decisions of various jurisdictions in the case of so-called commercial or business trusts as substitutes for business corporations. (Burdick on Partnerships [3d ed.], pp. 43, etc.; Thompson on Business Trusts, etc., p. 28; *Rhode Island Hospital Trust Co.* v. *Copeland,* 39 R. I. 193; *Williams* v. *Milton,* 215 Mass. 1; *Home Lumber Co.* v. *Hopkins,* [Kansas Sup. Ct.] 190 Pac. Rep. 601.)

Nor if that could be potential to change our outlook are we able to perceive that this view results in any defeat of a public policy as evinced in the statute relating to limited partnerships. The object of that statute and its predecessors in enactment was to provide for a combination of capital and skill and to enable those who had the former to contribute it to a partnership without other liability than loss of their investment so long as they complied with the statute and refrained from exercising the powers and privileges of general partners.

The interest of a creditor like the plaintiff is that the special capital shall be honestly and fully contributed as provided by the statute and he has no legal or direct interest in the identity of the special partner so long as he contributes his capital and observes all of the requirements of the statute. (*White* v. *Eiseman*, 134 N. Y. 101; *Webster* v. *Lanum*, 137 Fed. Rep. 376.) We fail to see how he is interested in the fact that the special partner has borrowed the capital which he contributes or has received it under some other form of arrangement even less compelling upon him than a loan, so long as the arrangement does not result in a violation or evasion of the statute and of the requirement that the special capital shall be contributed and that the special partner shall not assume the status of a general partner.

Swinging from the viewpoint that under this trust agreement, if valid, respondents were contributors of capital to the special partnership, plaintiff next argues that the trust agreement on its face was invalid as providing for the suspension of ownership of personal property for a fixed term in violation of section 11 of the Personal Property Law (Cons. Laws, ch. 41), and that defendants thus became " tenants in common of the fund which was contributed to the capital of the firm and the alleged trustee in contributing it acted as their agent." We believe that there may be various answers to this contention but we shall only consider three of them.

In the first place, we do not think that a fair interpretation of the trust agreement does provide for a suspension of the ownership of the fund which was to be contributed for a fixed period which might outrun two lives. Undoubtedly, as claimed by plaintiff, the trust agreement executed by the defendants and the partnership agreement are to be considered together. The trust agreement provided for the payment of moneys to Megargel as trustee to be contributed by him to the partnership under the articles of agreement for that partnership and

those articles did provide primarily for a partnership
to continue for the period of five years. Clearly, however,
the combined effect of the trust agreement and of the
partnership agreement primarily was to limit the former
to the life of the trustee and thus any conflict with the
statute was avoided. It was, however, secondarily pro-
vided in the trust agreement that in case the partnership
should be dissolved by the death of the trustee (as
undoubtedly would result from said death) " the sub-
scribers agree with each other that with the consent of
the surviving partners a new or limited special partner-
ship shall be formed with a special partner to be designated
by an appointment in writing to be signed by not less
than 51 per centum in amount of the subscribers and
that the amount of special capital * * * which as
beneficiaries to the trust hereby created they may be
severally entitled to receive upon the liquidation of the
old firm shall be paid over by them or caused to be paid
to such person and the same shall be contributed by him
as special capital to the new partnership. The provisions
of this section shall apply to successive dissolutions
caused by death of the special partner prior to the expira-
tion of the five-year period above mentioned." We
think that the only effect of these provisions was an
agreement amongst the subscribers, disconnected from
the members of the partnership, that if the partnership
was dissolved by the death of their trustee, they would
enter into negotiations for the formation of a new part-
nership to which, if the negotiations were successful,
they would contribute as capital the moneys which they
received upon the dissolution of the old partnership.
We think that this secondary provision was too con-
tingent and uncertain to amount to an agreement, when
taken into consideration with the other provisions, to
suspend the ownership of property for a fixed period
of years. The subscribers upon the dissolution of the

6

old firm were entitled to the capital which had been contributed and it thus came into their ownership. It is possible that if they failed to form a new firm as provided they might be liable upon a contract to some one who was injured by such failure, but that, we think, would be the limit of the provisions which they undertook.

In the second place, we are unable to conclude that plaintiff in this action can attack the validity of the trust agreement even if it be subject to successful attack. He is not a party to it. He has no interest in the property which is the subject of the trust. He is not seeking to enforce any lien thereon which is obstructed by the trust agreement. He is not defending himself against any attack which is based upon the trust agreement. He is an utter stranger to the entire proceeding, simply seeking to have an agreement held invalid in order that he may establish a personal liability against the parties who entered into it. No authority has been cited which sustains his right to make such an attack and we know of no principle which authorizes it. (*Bohn Mfg. Co.* v. *Hollis*, 54 Minn. 223; *Nat. Fire Proofing Co.* v. *Mason Builders' Assn.*, 169 Fed. Rep. 259; *Mallory* v. *Thomas*, 71 Kan. 562; *First Nat. Bank of Paterson* v. *Nat. Broadway Bank*, 156 N. Y. 459.)

But lastly even if we should adopt plaintiff's view upon both of the foregoing points we do not see how it would carry him forward to any position of success. The subscribers placed their money in the hands of Megargel under an authority contained solely and exclusively in this trust agreement. That was his only warrant for investing the moneys which he had received as special capital in the partnership. If it now should be held that this instrument was void and conferred no such authority we fail to see how the relationship of principal and agent would be established in respect of the contribution of this capital or how an unlawful trustee would be turned into a lawful agent. It would seem that

under such a contingency as that Megargel would have in his hands some money contributed by the subscribers without any authority for its use and that the result would be either that he might retain the moneys or that the subscribers might disaffirm everything that he had done with it and demand its immediate repayment.

Thus we are led to the conclusion that in the statement of the two causes of action which we have been discussing the complaint does not state facts sufficient to show any liability upon the part of any of the respondents except the respondent Megargel. As to him the complaint does state a cause of action subject to the consideration of the question now to be discussed in connection with the other two causes of action.

It will be remembered that in these causes of action defendants are alleged to have been general partners, and the only question to be discussed is the one whether the judgment recovered by plaintiff in the courts of Massachusetts upon the same causes of action here involved against several other members of the firm of Megargel & Company operated to merge the cause of action against these defendants who were not joined because non-residents and not subject to process in said state. The claim that the Massachusetts judgment did so operate is based on the common-law rule that a cause of action against several joint debtors, as copartners are, is merged in a judgment against part of them. There is no allegation that this common-law rule has been changed by statutory enactment in the state of Massachusetts and, therefore, we assume that it exists and we shall assume without deciding that under the full faith and credit clause of the Federal Constitution we are compelled in this action to give to the Massachusetts judgment the effect claimed for it if such would be the effect at common law. We do not, however, think that under the best established rule the judgment under the circumstances set forth did have the effect claimed for it.

This rule of merger of joint obligations is a technical one inherited from the common law, which often has been productive of injustice and which is enforced by courts with more or less restlessness and repugnance. Whatever the origin of the rule, it is qualified to-day by the principle of election, it being held that where a creditor holding the joint obligation of several parties proceeds to recover judgment against part of them it is evidence of a choice to thus hold part and let the others go. Therefore, various exceptions have been engrafted upon the rule to the effect that when the action of the creditor is controlled by circumstances which negative any idea of an election he will be exempted from the effects of the judgment as a merger. (*U. S. Printing & Lith. Co.* v. *Powers,* 233 N. Y. 143.)

Whatever course of reasoning may have been adopted in various decisions, it is in accordance with this rule that it has been held in many jurisdictions that where a creditor bringing suit upon a joint obligation is unable to get service upon some of the obligors because they are beyond the jurisdiction in which he is acting, his judgment there recovered will not be regarded as a bar against the obligors not served, when he is able to obtain jurisdiction of them in some other forum. That doctrine was accepted by the courts of this state in an early decision which so far as we are aware has never been questioned and directly or in effect has been adopted by the courts of many other states. (*Brown* v. *Birdsall,* 29 Barb. 549; *Third Nat. Bank of St. Louis* v. *Graham,* 174 App. Div. 503; *Campbell* v. *Steele & Co.,* 11 Penn. St. 394; *National Bank* v. *Peabody & Co.,* 55 Vt. 492; *Wood* v. *Watkinson,* 17 Conn. 500; *Merriman* v. *Barker,* 121 Ind. 74; *Rand* v. *Nutter,* 56 Me. 339; *Tibbetts* v. *Shapleigh,* 60 N. H. 487; *Yoho* v. *McGovern,* 42 Ohio St. 11; *Bradley Eng., etc., Co.* v. *Heyburn,* 56 Wash. 628; *Beck & Pauli Lith. Co.* v. *Wackers & Birk B. & M. Co.,* 76 Fed. Rep. 10.)

Holding, therefore, that the weight of authority in this country is to the effect that the common-law rule of merger

does not apply to a judgment recovered as was plaintiff's, in favor of those who were beyond the jurisdiction of the court which rendered it, we are not bound to give to the Massachusetts judgment the effect claimed by the defendants.

Coming then to the present suit with no such bar in his way the plaintiff's right to proceed is additionally secured by section 1946 of the Code of Civil Procedure which provides: " Where for any cause, one or more partners have not been joined as defendants in an action upon a partnership liability, and final judgment has been taken against the persons made defendants therein, the plaintiff, if, the judgment remains unsatisfied, may maintain a separate action upon the same demand, against each omitted partner." This section clearly authorized the commencement of action against these defendants upon the facts set forth in the cause of action under review unless it be true as claimed by defendants that it required a separate action to be brought against each partner who had been omitted in the Massachusetts action. We should be reluctant to give any such narrow construction as that to this remedial provision and which if adopted would require in the present case a multitude of actions instead of one. That question, however, is not before us for there is no demurrer on the ground of such improper joinder of defendants or causes of action.

Therefore, we conclude that the allegations respectively of the second and fourth causes of action do set forth facts sufficient to constitute a cause of action against these defendants and that the demurrers to them should be overruled.

Accordingly the judgment of the Appellate Division appealed from in so far as it reverses the order of the Special Term overruling the demurrer of each of the defendants to the first and third causes of action and dismissing the complaint, except as to the defendant Ralph Megargel, should be affirmed and said judgment in so

far as it reverses the order of the Special Term overruling the demurrer of the defendant Ralph Megargel to said causes of action and in so far as it reverses the order of said Special Term overruling the demurrer of each of the defendants to the second and fourth causes of action and dismissing the complaint should be reversed and the order of the Special Term affirmed, with costs in this court and the Appellate Division and with leave to said defendants to withdraw demurrers and plead over within twenty days on payment of said costs.

HOGAN, CARDOZO, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgment accordingly.