Samuel B. Field, Edward W. Pyle and Allan Sauerwein,

*vs.*

Layton & Layton, Incorporated, a corporation of the State of Delaware, Charles L. Horsey, Solomon S. Kenney, Albert H. Phillips, Victor I. Records, Administrator of the estate of William T. Records, deceased, George W. Ward, T. J. Waller, Orlando V. Wooten, The Selbyville Bank, a corporation of the State of Delaware, Thomas F. Cottinham, William J. Highfield and Industrial Trust Company, a corporation of the State of Delaware.

*New Castle, May 2, 1928.*

*Robert H. Richards* and *Aaron Finger* and *George W. Lindsey*, of Baltimore, Md., for complainants.

*Henry R. Isaacs* and *Charles C. Keedy*, for Industrial Trust Company.

THE CHANCELLOR. The demands of the complainants are purely legal demands, two of them being upon promissory notes held by Field and Pyle respectively and the third being upon a claim for legal services rendered by Sauerwein. Certainly a court of law is the ordinarily appropriate forum in which to seek satisfaction of such demands.

A court of equity has no jurisdiction to entertain suits for the enforcement of purely legal claims unless their attempted assertion can be brought under some one of the recognized heads of equitable cognizance. Our statute provides that the Court of Chancery "shall not have power to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other Court, or jurisdiction, of this State." *Revised Code* 1915, § 3844. The only particular in which the complainants contend the law courts are incapable of affording to them a sufficient remedy consists, not in the inability of those courts to grant a remedy, but in their inability to do so without resort to a great multiplicity of suits. This being so, they contend, the Court of Chancery may with perfect propriety assume jurisdiction over the matters in controversy notwithstanding the typically legal character of the claims.

The jurisdictional ground upon which the complainants rely therefore in support of their bill is the familiar and much discussed one of the power of equity to entertain bills in order to save litigants from the burden or vexatious annoyance of a multiplicity of suits.

The jurisdiction of equity in proper cases to entertain bills whose sole purpose is to settle controversies which, but for equity's

intervention, would result in a great multiplicity of suits at law is unquestioned. This court has recognized the jurisdiction, though in the case cited its exercise was denied under the particular facts shown. *Equitable G. & T. Co. v. Donahoe*, 8 *Del. Ch.* 422, 45 *A.* 583. In *P. W. & B. R. R. Co. v. Neary*, 5 *Del. Ch.* 600, 8 *A.* 363, the jurisdiction rested on an avoidance of a multiplicity of suits. The Court of Errors and Appeals in *Murphy, et al., v. Wilmington*, 6 *Houst.* 108, 22 *Am. St. Rep.* 345, said that "equity will interpose, in a proper case, to prevent a multiplicity of suits, excessive litigation, or circuity of action."

The jurisdiction is therefore well settled in this State as well as elsewhere. But when is the case a "proper" one for the exercise of the jurisdiction? The answer to that question, if thorough, would lead to a laborious examination of the authorities and a lengthy discussion of their rulings, and, in the end, conflict upon some phases of the question would be left in hopeless irreconcilability. *Pomeroy* in Section IV of his first volume of *Equity Jurisprudence*, (4th Ed.) has discussed the whole subject in his characteristically learned manner and his treatment of it demonstrates the confusion found in the cases dealing with it. He has succeeded, however, in deducing from the mass of authorities certain general principles upon which no substantial disagreement in judicial opinion exists. He mentions four classes of cases in which bills to prevent a multiplicity of suits fall. 1 *Pomeroy's Equity Jurisprudence*, (4th Ed.) § 245. The first two classes are where two individual parties are concerned and they are as follows: 1. Where the same individual, in order to secure full relief at law, would be obliged to bring a number of actions against the same wrongdoer all growing out of the same wrongful act and involving similar questions of law and fact. Cases of nuisance, waste and continued trespass illustrate this class. 2. Where B. institutes, or is about to institute, a number of suits either successively or simultaneously against A., all depending upon the same legal questions and similar issues of fact, and A. by a single equitable action seeks to bring them all within the scope and effect of one judicial determination. Cases of repeated actions of ejectment fall within this class.

*Pomeroy's* next two, the third and fourth, classes embrace

cases where numerous parties are present on one side of the suit either as complainants or defendants. They are:

"3. Where a number of persons have separate and individual claims and rights against the same party, A., but all arise from some common cause, are governed by the same legal rule, and involve similar facts, and the whole matter might be settled in a single suit by all these persons uniting as co-plaintiffs, or one of the persons suing on behalf of the others, or even by one suing alone. The case of several owners of distinct parcels of land upon which the same illegal assessment or tax has been laid is an example of this class.

4. Where the same party, A., has or claims to have some common right against a number of persons, the establishment of which would regularly require a separate action brought by him against each of these persons, or brought by each of them against him, and instead thereof he might procure the whole to be determined in one suit brought by himself against all the adverse claimants as codefendants."

Into the classifications thus arranged by Mr. Pomeroy all the reported cases sustaining the jurisdiction of equity to prevent a multiplicity of suits may be fitted and his language descriptive of each class contains about as accurate a definition of the general features of each class as one may hope to be able to formulate. Of course such general language needs to be greatly amplified in order to convey a more intimate view of the whole subject with its various refinements and specific applications.

Looking at the case in hand, it is apparent that it lies entirely outside the first two classes. If the case is maintainable at all as one to prevent a multiplicity of suits, it falls within the third and the fourth classes named by Mr. Pomeroy, though it is not precisely like either of them, for here there is neither a number of persons suing an individual nor an individual suing a number. This is a case where a number are suing a number.

But the circumstance of a number suing a number cannot of itself alone, I conceive, render inapplicable the doctrine upon which the jurisdiction to prevent a multiplicity of suits rests, if otherwise all the essentials of the jurisdictional requirements are present.

Are all the essentials present in this case? In answering this question I shall turn first to the complainants' side of the case and having examined it from that angle turn next to the side of the defendants to see how the matter appears from that angle.

First then are all the essential requirements present on the side of the complainants? With respect to them, we have three complainants, each of two of them holding a promissory note and one of them possessing a claim for legal services. The three claims have nothing in common, unless indeed the fact that the debtor in each case is the same person or group of persons can be said to constitute a thing common to all of them within the meaning of the phrase as used in connection with the doctrine of multiplicity of suits, a point of view which no court has ever advanced. Certainly if a number of persons have separate and distinct legal claims against the same debtor, the fact that the debtor is common to all the creditors cannot alone justify equity in drawing the one debtor within its domain in order that his several creditors may all sue him at the same time. The individual claims of the complainants must, in the language of Mr. Pomeroy's description of the third class, all arise from some common cause, be governed by the same legal rules and involve similar facts. The three claims represented by the complainants neither arise from a common cause, nor are they governed by the same legal rules, nor do they involve similar facts. Even if the cause of action in the case of each complainant were clearly equitable in nature instead of purely legal, a joining of them in one bill would offend against the rule against multifariousness in pleading, so diverse and unrelated are they. What is here being sought is to consolidate in equity three causes of action at law and in one piece of equitable litigation, carry on three separate, distinct and entirely unrelated lawsuits, which means the drawing of three separate issues to be tried at once, upon evidence separately applicable to each and eventuating in three separate decrees put in the form of one, granting or denying to each complainant relief on his particular claim. I should be greatly surprised if any case were found anywhere justifying such a procedure.

Looking at the case from the side of the complainants, therefore, the demurrer must be sustained. *Gulf & S. I. R. Co. v. Barnes*, 94 *Miss.* 484, 48 *So.* 823; *Hamilton v. Alabama Power Co.*, 195 *Ala.* 438, 70 *So.* 737; *Marselis, et al., v. Morris Canal, etc., Co.*, 1 *N. J. Eq.* 31; *Van Auken v. Dammeier*, 27 *Or.* 150, 40 *P.* 89; *International Paper Co. v. Bellows Falls Canal Co.*, 88 *Vt.* 93, 90

*A.* 943; *Southern Steel Co. v. Hopkins*, 174 *Ala.* 465, 57 *So.* 11, 40 *L. R. A.* (*N. S.*) 464, *Ann. Cas.* 1914B, 692; *Roanoke Guano Co. v. Saunders, et al.*, 173 *Ala.* 347, 56 *So.* 198, 35 *L. R. A.* (*N. S.*) 491; *St. Louis, I. M. & S. R. Co. v. McKnight*, 244 *U. S.* 368, 37 *S. Ct.* 611, 61 *L. Ed.* 1200; *Newton Oil & Mfg. Co. v. Sessum, et al.*, 102 *Miss.* 181; 59 *So.* 9.

It would be proper to conclude this opinion at this point. But inasmuch as the question has been argued and will in all probability arise later on, whether one of these complainants can maintain a bill against all of the defendants on the theory that he is entitled to do so in order that a multiplicity of suits may be avoided, I may as well proceed to consider whether, if there were no objection to the bill on the score of the inability of the complainants as a group to sue, the bill might be sustained as against the defendants by one alone of the complainants.

Second, then, are the requirements essential for an assertion of the jurisdiction present by reason of anything peculiar to the liability and the situation of the defendants?

The complainants assert in their bill that the defendants are jointly and severally liable. They assert that one hundred and forty-four law suits will be necessary for them to collect their debts. Why this is so is not made clear. The bare assertion is made. It certainly cannot be true if each complainant is required, as above indicated, to sue separately. If so, taking the complainants' assertion at full value, it would mean at the outside not one hundred and forty-four law suits, but rather one-third as many, or forty-eight for each party whether he sues in law or equity. But no such number of suits as that would be necessary unless the individual creditor elected to sue each defendant severally. Here in Delaware where only twelve of the bondholders are located, even separate suits based on a liability in severalty could not number over twelve. Of course in so far as the trouble to each of the complainants in bringing numerous suits may be due to the residence in different states of the debtors and to the consequent necessity of resort to different jurisdictions, multiplicity of suits cannot be avoided regardless of what tribunal is appealed to, whether one of law or of equity. In considering this aspect of the demurrer, therefore, I think of

the case in terms only of the defendants located in the jursidiction of Delaware who are within the reach of its courts, for no court in Delaware could by any possibility do anything by way of preventing a multiplicity of suits in so far as the necessity for such multiplicity is occasioned by the residence of parties beyond the jurisdiction.

Looking at the matter then as though the numerous actions at law which it is sought by this bill to prevent are actions against Delaware defendants it appears that, if one of the complainants desired to assert his claim in a law action on the ground of a several liability, twelve actions at law would be the outside limit instead of one hundred and forty-four as claimed.

This to be sure is a number large enough to impose trouble on the suing creditor. It cannot be said that twelve can be called a multitude. Even if it could, the jurisdiction of equity to bring all twelve of them within its processes for adjudication would not by reason of multitude alone be made out, for as observed by *Wales, J., in Murphy, et al., v. Wilmington, supra*, speaking for the Court of Errors and Appeals, "multiplicity does not mean multitude, and equity will not interfere where the object is to obtain a consolidation of actions, or to save the expense of separate actions." Mr. Pomeroy in section 251½ of volume 1 of the Fourth Edition of his work on Equity Jurisprudence expresses and elaborates the same principle. His text is full and abundant reference to the cases in support thereof is to be found in his notes. I quote the following from the section referred to as particularly apt:

"* * * There must be some common relation, some common interest, or some common question in order that the one proceeding in equity may really avail to prevent a multiplicity of suits. The equity suit must result in a simplification or consolidation of the issues; if, after the numerous parties are joined, there still remain separate issues to be tried between each of them and the single defendant or plaintiff, nothing has been gained by the court of equity's assuming jurisdiction. In such a case, 'while the bill has only one number upon the docket and calls itself a single proceeding, it is in reality a bundle of separate suits, each of which is no doubt similar in character to the others, but rests nevertheless upon the separate and distinct liability of one defendant' in cases resembling those of the fourth class, or upon the separate and distinct liability of one plaintiff in cases resembling those of the third class. In refusing to entertain these spurious bills of peace, courts of equity

impose no real limitation upon their jurisdiction, which, by its very definition, exists not *because* of multiplicity of suits, but to *avoid* them, when their rules of procedure can avail to that purpose; indeed, they merely apply to bills of this character the ordinary rules of equity pleading relating to multifariousness."

From the nature of the causes of action held by each of these complainants it would seem obvious that there must be as many issues as there are defendants and a "simplification or consolidation of the issues" presented by them all would be impossible. See the cases cited by Pomeroy in section 251½ and particularly those cited by him in the note on page 416.

What has just been said is predicated on the theory that an individual complainant if he sued at law would be required to bring twelve separate suits against these defendants. If he did so, it would be because he chose to do so on the theory that their liability is several. But if as his bill alleges the liability is not only several but joint, the claimant would not be required to proceed at law in twelve separate actions. He could sue in one action. *Cunningham v. Dixon*, 1 *Marv.* 163, 41 *A.* 519; *Jackson v. Hedges*, 4 *Har.* 96; *Reybold v. Parker*, 6 *Houst.* 544. The last case, though reversed, was reversed on other grounds. If this be so, it is apparent that one action at law, not many, is available to each of the complainants to secure ample relief against all the defendants, and therefore in this aspect of the matter no occasion whatever exists for a resort to equity because of a possible multiplicity of suits.

It might be suggested that if a complainant should proceed on the theory of a joint liability and bring one action at law against all the bondholders, taking judgment however against only the twelve Delaware defendants who were served in accordance with the rule laid down in the cases supra from 1 *Marvel*, 4 *Harrington* and 6 *Houston*, he would be confronted by the result that if he thus took judgment, his right of action against the absent co-contractor defendants would be merged in the judgment and gone forever, as indicated by the Chancellor, speaking for the Court of Errors and Appeals in *Reybold v. Parker*, 7 *Houst.* 526, 32 *A.* 981; and that in the light of such a result the complainant's right to remain in equity ought not to be tested

by the circumstance that he could proceed in one suit at law to obtain judgment against some of the joint debtors.

To this, the following is to be said: The case in which the doctrine of merger of the cause of action into the judgment was applied by the Chancellor speaking for the Court of Errors and Appeals was one where the absent defendant was so far as appears not a non-resident and the sole question was whether the statute of limitations was interrupted in its running until such time as the absent defendant came within the jurisdiction. Where a cause of action is joint, and the parties liable under it are residents of different states, it is obvious that it would be impossible in many of such cases for the creditor to find a jurisdiction in which all of his joint debtors could be found and served with process. If the common law doctrine of merger should be held to apply with all of its rigidity in every such case, it would necessarily follow that a joint claim against several debtors, some resident in the jurisdiction and others non-resident, would often be turned by the doctrine into a claim against only one or a few of them. If such be the law, an illustration is found where the substantial merits of justice are made to yield to the law's slavish devotion to theory. I cannot believe that the Court of Errors and Appeals meant, in the case referred to, to give to the common law doctrine any such application. Courts elsewhere have refused to allow the doctrine to work an injustice of the kind referred to and have accordingly found exceptions to its application. One of the most familiar of these exceptions is that "where a creditor bringing suit upon a joint obligation is unable to get service upon some of the obligors because they are beyond the jurisdiction in which he is acting, his judgment there recovered will not be regarded as a bar against the obligors not served, where he is able to obtain jurisdiction over them in some other forum." *Crehan v. Megargel*, 234 *N. Y.* 67, 136 *N. E.* 296, citing in support of its language, *Brown v. Birdsall*, 29 *Barb.* (*N. Y.*) 549; *Third Nat. Bank v. Graham*, 174 *App. Div.* 503, 161 *N. Y. S.* 159; *Campbell v. Steele*, 11 *Pa.* 394; *Nat. Bank v. Peabody*, 55 *Vt.* 492, 45 *Am. Rep.* 632; *Wood v. Watkinson*, 17 *Conn.* 500, 44 *Am. Dec.* 562; *Merriman v. Barker*, 121 *Ind.* 74, 22 *N. E.* 992; *Rand v. Nutter*, 56 *Me.* 339; *Tibbetts v. Shapleigh*, 60 *N. H.* 487; *Yoho v.*

*McGovern*, 42 *Ohio St.* 11; *Bradley Eng., etc., Co. v. Heyburn*, 56 *Wash.* 628, 106 *P.* 170, 134 *Am. St. Rep.* 1127; *Beck & Pauli Lith. Co. v. Wacker, etc., Co.* (*C. C. A.*) 76 *F.* 10. See, also, *Larison v. Hager* (*C. C.*) 44 *F.* 49; *Cox v. Maddux*, 72 *Ind.* 206; *West v. Furbish*, 67 *Me.* 17; *Dennett v. Chick*, 2 *Greene.* (*Me.*) 191, 11 *Am. Dec.* 59.

If an exception to the common law rule lies, as the cases cited hold, it therefore follows that each of these complainants, even though they proceed on the theory of a joint debt, need bring only one suit in the law courts of this State in order to obtain judgment against all the defendants resident here, without incurring the consequences of having to forego their rights of action against the non-residents.

If, as suggested by the solicitor for the complainants, one action should thus be brought at law against all of the defendants on the theory of a joint liability, and any judgment obtained should be paid by one of the defendants, the one paying would be driven to suits to collect from his co-defendants their proper proportions of the joint debt and a multiplicity of suits would thus be entailed upon the defendants, it does not follow that this bill should be retained in order to avoid that result. I say this for the following reasons: It would seem that the multiplicity of suits thus sought to be avoided could hardly be of any concern to the complainants, for such multiplication of litigation could in no wise be annoying or burdensome or vexatious to the complainants. It would be a matter of concern solely to the defendants. That sort of thing is what any joint debtor assumes the risk of being bothered with when he assumes a joint obligation. In such cases, furthermore, the law courts are provided with ample machinery to afford adequate relief by requiring an assignment by the plaintiff of the joint judgment to the paying defendant who may have execution against his co-defendants for their proportionable part of the debt. *Revised Code* 1915, § 2905.

Whether, therefore, the defendants are to be regarded as severally liable to the complainants or jointly so, the same result follows, that no case is presented falling within the recognized principles which justify a court of equity in taking cognizance of purely legal demands in order to prevent a multiplicity of suits

The demurrer will be sustained.