WILLIAM ARTHUR WISE *v.* THE DELAWARE STEEPLECHASE AND RACE ASSOCIATION.

(*February* 17, 1941.)

LAYTON, C. J., RODNEY and SPEAKMAN, J. J., sitting.

*David J. Reinhardt, Jr.,* for plaintiff.

*Clarence A. Southerland* and *George Gray Thouron* for defendant.

Superior Court for New Castle County, November Term, 1940.

LAYTON, Chief Justice:

*Section* 17, *Article II* of the *Constitution,* forbidding all forms of gambling, was amended by adding the following: "except wagering or betting on races at race tracks by the use of pari-mutuel machines or totalizators in connection therewith."

By *Section* 5510 of the *Revised Code of* 1935, the Delaware Racing Commission may authorize commissions on pari-mutuel or totalizator pools to the operators of race meets, provided that such commissions, when added to the amount payable to the Racing Commission for the use of the State, shall not exceed six percent of the total contri-

butions to the pool *"plus the odd cents of all redistributions to be made on all pari mutuel or totalizator pool contributions exceeding a sum equal to the next lowest multiple of five."* The odd cents are known as "breakage."

The defendant is a licensee of the Racing Commission. At its race track the pari-mutuel system of wagering with a totalizator was, of course, used. Wagers were accepted only in the amounts of two, five, ten and fifty dollars, and in three ways, "straight," "place" and "show," the pools being kept separate.

Although $1 wagers were not received, nevertheless the calculations with respect to the several pools in any race were made on the basis of a wager of $1. The odd cents thus shown were multiplied by the number of dollars of the wager, this amount was deducted as "breakage" and retained by the licensee. This method of calculating breakage was, it is agreed, in accordance with the custom followed in this country; and the practice was known to the plaintiff.

On May 29, 1940, the plaintiff wagered the sum of $5 that a certain horse in a certain race would "show"; and the horse was one of the first three finishing the race. On the wager made the amount payable calculated on the basis of $1 was $1.26. Multiplied by five, the number of dollars wagered, the result was $6.30; and the plaintiff contended that on his wager, or contribution to the pool, there were no odd cents and, therefore, no "breakage." By the defendant's system of calculation, the "breakage" was 5 cents. The plaintiff's demand was for the sum of $6.30. He was offered, and he refused, the sum of $6.25.

The defendant first contends that its method of computing "breakage" is in strict accord with the pari-mutuel system, and is the only method contemplated or permitted

by the Constitution. The argument is that the compound word "pari-mutuel" is a word of art, having a technical meaning in the trade, and must be considered as having been used in the technical sense unless it otherwise appears. Hence, the system requires the computation of "breakage" in the manner adopted by the defendant not only because of the uniform custom, but also for the reason that any other method of calculation would, in many cases, result in inequality contrary to the basic idea of the system.

■■ It may be agreed that the term "pari-mutuel" has a technical meaning and was used in the technical sense. The system, however, is nothing more than a division of the pool among the successful contributors in proportion to the respective contributions, or wagers. The totalizator is the mechanical device by which the betting public is informed rapidly and accurately of odds and results, and is protected against human errors and malpractices. The Legislature, in amending the Constitution and in enacting the statute, proceeded on the theory that, as a certain part of the public would gamble on races notwithstanding prohibiting laws, the public welfare would be better served by legalizing a particular manner of gambling which by experience had been shown to be the most equitable and free from evil practices incident to straight wagering through book makers. The flaw in the defendant's argument is the assumption that "breakage" is an essential part of pool wagering. Authority for the assumption is not to be found in the language of the *Constitution*, and if the statute were entirely silent as to the deduction of odd cents from the amounts wagered, it would not be violative of the constitutional provision. We are not informed of the origin of "breakage", but it is fairly safe to say that the custom by which the race promoter retained odd cents of the

amounts due on wagers grew out of mere inconvenience arising from the counting and paying out of pennies to an impatient crowd of successful bettors. A source of large income to the promoter was discovered, and, in the course of time, that which strictly and legally could not have been withheld was made a lawful retention by statute. This lawful retention is not at all uniform. In some states the odd cents are referable to the next lowest multiple of ten, allowing a maximum deduction of 9 cents. In some states the management and the State share the breakage.

Clearly breakage is not an essential of the system of pool wagering; and the permissive language of the *Constitution* may not be twisted into a mandate by which "breakage" must be provided for in any legislation enacted under the Constitution. We do not pursue the thought that "breakage" is utterly foreign to the system, and therefore without constitutional sanction. The system would remain the same as one assuring practical fairness and equality if no "breakage" were allowed at all. Being a thing apart from the system itself, arising out of mere inconvenience and constituting a source of large income to the promoter, the legality of withholding from the successful bettor the odd cents which otherwise would be paid to him, must depend on the language of the statute.

First the admitted custom is relied on; but the purpose and meaning of the Legislature primarily must be ascertained from the language of the statute. There is no room for construction where the language is plain and unambiguous and its meaning clear and unmistakable. In such case the Court is not allowed to search for a meaning outside of the language. Rules of construction are useful only in cases of doubt; they are never to be employed to create a doubt. *Russell Motor Car Co. v. United States et al.,* 261 *U. S.* 514, 43 *S. Ct.* 428, 67 *L. Ed.* 778. Ex-

traneous matter, such as usage or custom, may be considered only where there is ambiguity; and where the language of the stateute indicates a plain, definite and sensible meaning, usage or custom, no matter how long continued or how generally acquiesced in, may not be seized upon to override the plain meaning conveyed by the statutory language. 2 *Lewis' Sutherland Stat. Cons.*, 2d Ed., § 473; 59 *C. J.* 1024; *Goldsborough v. United States, Fed. Cas. No.* 5,519. The language of the statute is clear. A "contribution" to a pool is a wager. A "redistribution" is a "pay-off" on the wager. A wager of $5 is a contribution of that amount to the pool, and no casuistry can make five $1 wagers out of one $5 wager. Moreover, $1 wagers were not allowed. The "breakage" is the odd cents on the "pay-off", or redistribution of the contribution, or wager, as it was actually made. A thing expressed puts an end to implication; and knowledge of this maxim is imputed to the Legislature. No provision was made for the calculation of breakage on the basis of $1 irrespective of the amount wagered, a matter easily accomplished. The Court has no power of legislation, and it ought not to attempt to legislate under the guise of construction.

In this same connection it is argued that as the totalizator is a necessary adjunct to the system of wagering, and as its results are shown only in the terms of $1, "breakage" must be calculated in accordance therewith. It was not, however, the purpose of the constitutional provision to define or describe the mechanism known as a totalizator. Certainly the machine has been greatly improved during the years; and we should hesitate to say that it has reached the limit of improvement. Whatever may be its practical limitations now, it cannot be said that the present form of machine is the only one within the contemplation of the constitutional provision.

 It is argued that it is of the essence of the pari-mutuel system that there be an equal distribution of the pool among the successful contributors, and, therefore, the system itself demands that "breakage" be computed on the basis of a dollar wager. It is admitted in the stipulation of facts that if the method of calculation advocated by the plaintiff shall prevail, the result in many cases would be the payment of different amounts to persons making the same aggregate wagers, as for example, the holder of ten $2 tickets might receive less than the holder of two $10 tickets, as has been the practice at Canadian race tracks. Inequalities have been recognized as inevitable in Canada, and under any system of calculating "breakage" inequalities will appear. The system is a form of gambling, the basis of which is chance. An additional element of chance growing out of the method of calculating "breakage", a supposed concomitant of the system, is not destructive of the fairness and equality supposed to be inherent in it. The argument falls of its own weight, for the question immediately arises, why is the deduction of odd cents from the amount otherwise payable on a wager of the essence of a system that is said to demand absolute equality? Why not pay to the successful bettor the full amount due him, even the pennies? If the limitations of our system of coinage and the paying out of pennies afford no great hardship or unfairness in the ordinary affairs of life, legalized gambling ought not to complain. And it may also be said that the practice of withholding small sums of money was not devised in the interest of the bettor for the purpose of assuring him that under the pari-mutuel system he would receive the last cent to which he was entitled. Absolute fairness to the successful bettor was not the guiding purpose. On the contrary the purpose was, and is, additional gain at the expense of the betting public.

The defendant further contends that if the statute does not mean breakage on the basis of a dollar, then it must mean breakage on the basis of the entire contribution of each pool member, a conclusion said to be absurd, and one that would render impossible the operation of the pari-mutuel system. But this conclusion is not at all necessary. Each contribution, or wager, is a separate transaction, evidenced by a ticket. To make the wagers in the different amounts allowed, application must be made to the appropriate office or window. For example, to make a wager of $17, three separate windows must be visited. Three separate evidences are furnished, showing three distinct contributions to the pool. Each redistribution or "pay-off" would, in the same case, mean separate transactions at different windows .

*Feeney v. Eastern Racing Association, Inc.*, 303 *Mass.* 602, 22 *N. E.* 2*d* 259, is relied on by the plaintiff in support of his position. There it was held that "the breaks" as defined by the statute was not a part of the pari-mutuel system; and that, under the language of the statute, successive breaks could not be deducted from a single wager. The statute, *G. L. (Ter. Ed.) Mass. c.* 128*A,* § 5, as amended by *St.* 1936, *c.* 351, required the racing management to return to the winning patrons all sums deposited as an award or dividend, *"according to the acknowledged * * * rules and method* under which such pari-mutuel or certificate system has been operated" less the breaks. The term, "breaks", was defined as the odd cents over any multiple of 10 cents otherwise payable to the bettor. The defendant seeks to distinguish this case from the one *sub judice* on two grounds: that the Massachusetts Court was not confronted with a constitutional provision, and that the language of the statute was essentially different. The constitutional provision has no real bearing. All that it does is

to permit the legalization of betting on races at race tracks by the use of pari-mutuel machines. The concern of the Court is with the statute, not primarily with the constitutional provision. In Massachusetts, as we conceive, there was no constitutional restriction against gambling. In this State there is a restriction on all gambling except the particular form of gambling under discussion; and the constitutional provision requires no more than legislation in accordance with its terms. Precisely the same question was before the Massachusetts Court as here regardless of the constitutional provision, namely, could breakage be legally withheld more than once on the same wagering transaction? There is no essential difference in the language of the respective statutes apart from the amount and disposition of the odd cents. Moreover, the Massachusetts Court was faced with the words which we have italicized, and it was agreed there, as here, that the defendant was acting in accord with the acknowledged rules and methods of the pari-mutuel system in computing the ratio of the net winnings on the basis of $1 for the purpose of determining the award or dividend to winning patrons. The decision was compelled, we think, by the language of the Massachusetts statute. It is a precise authority on the question before us.

As a result of the decision the Massachusetts statute was amended by defining breakage to be the odd cents over any multiple of 10 cents of winnings *per dollar* wagered.

 Lastly it is argued that, if the plaintiff's contention be correct that the defendant's method of computing breakage is not warranted by law, he is suing on an illegal contract, and the law will not aid him in his effort to enforce the contract. The argument is specious. Whatever the defendant may have offered, and whatever the plaintiff may have tacitly accepted, with respect to the method of computing "breakage", did not constitute the

contract, for that was written into the contract by the force of the statute. See *Trader v. Jester*, 1 *Terry* (40 *Del.*) 66, 1 *A.* 2*d* 609. It was the plaintiff's right to make a wager under the terms of the law, and he was not to be deprived of that right by imposition of an unwarranted term or condition. The wager itself was lawful. The statute fixed the return to the successful bettor. The amount of "breakage" to be deducted was not a matter of private agreement. It is not to be assumed that the parties, or either of them, intended to flout the law. The most that can be said is that there was an innocent misconception of the law. The rule, that an agreement in violation of a statute is invalid, is not inflexible. Public policy is the basis of the law, and the rule is adopted not strictly for the benefit of the parties but rather for the benefit of the public. Where the public interest will be better served by granting than by denying relief, the general rule should give place. 12 *Am. Jur.* 654; 2 *Elliott, Contr.*, § 665; *Lester et al. v. Howard Bank*, 33 *Md.* 558, 3 *Am. Rep.* 211. The result of the argument advanced by the defendant is this: the Association will deduct "breakage" as it construes the law; if it is wrong, and unintentionally though it be, has violated the law, the successful bettor's case is worse, for the law will not aid him in recovering his share of the pool, not even his contribution to it. This, we think, is a consequence clearly inimical to the public interest.

The contract between the parties was governed by the statute. "Breakage", under the statutory definition, is referable to the contribution to the pool as it was made. Successive "breaks" cannot be deducted from a single wager.

Judgment, without costs of suit, as was stipulated, will be entered in favor of the plaintiff in the sum of $6.30.