WILLIAM ARTHUR WISE,

Complainant Below, Appellant,

*vs.*

THE DELAWARE STEEPLECHASE AND RACE ASSOCIATION, a corporation of the State of Delaware,

Defendant Below, Appellee.

*Supreme Court, On Appeal, Nov. 26, 1945.*

RICHARDS, C. J., RODNEY and TERRY, JJ., sitting.

*Albert L. Simon*, for complainant below, appellant.

*Clarence A. Southerland, Collins J. Seitz*, of Southerland, Berl & Potter, for defendant below, appellee.

RICHARDS, Chief Justice, delivering opinion of the court:.

The Delaware Steeplechase and Race Association is the owner of a race course, at which it conducts race meetings during certain seasons of the year, under a license issued to it by the Delaware Racing Commission. The statute creating The Delaware Racing Commission and authorizing it to license race meetings, made betting at race meetings licensed by it legal, provided that said betting is. done within the inclosure of the race meeting and is conducted by selling pools by the use of pari-mutuel machines or totalizators. *Revised Code* 1935, *Chapter* 163. 41 *Laws of Delaware, Chapter* 219, *Page* 681.

The system of betting by pari-mutuel machines and totalizators provides for selling pools on races the net amounts of which are ratably divided among the successful contributors to said pools, in proportion to their respective contributions. The only amounts in which bets are received are two, five, ten, and fifty dollars. These bets can be made in three ways for "straight," "place" and "show;" a separate pool being kept for all straight bets in any race, and likewise a separate pool for all place and show bets in any race.

The statute empowered the Racing Commission to authorize commissions on pari-mutuel or totalizator pools to operators of race meetings, up to a certain amount, plus the odd cents of all redistributions to be made to winning contributors to all pari-mutuel or totalizator pools exceeding a sum equal to the next lowest multiple of five. These odd cents are what is generally termed "breakage." The calculations in order to ascertain the amount of redistributions to be made to the contributors to any pool on any race, are made on the basis of a one dollar bet. From the sum thus obtained the appellee originally deducted breakage, and in this manner reduced said sum to an amount divisible by five; and then made separate multiplications of

said amount by 2, 5, 10 and 50, in order to arrive at the respective amounts payable to each.

This method of deducting breakage was attacked by this appellant in an action brought against this appellee in the Superior Court in New Castle County. In that case the court held that the method adopted by the defendant for deducting breakage was unlawful, and directed that the defendant should first compute the amount due on each successful $2, $5, $10 and $50 bet and make a separate deduction of the breakage from each amount thus obtained.

This ruling of the Superior Court was upheld by this court. *Wise v. Delaware Steeplechase Race Association,* 2 *Terry* 182, 18 *A. 2d* 419; *Delaware Steeplechase & Race Association v. Wise,* 2 *Terry* 587, 27 *A.2d* 357.

In the bill filed in the Court of Chancery, the complainant alleges, that at a race meeting held in 1939, while the defendant was still computing breakage by the original method, the complainant made a successful ten dollar bet on a horse named "Maewhisk." In computing the amount due on the complainant's successful bet the defendant used the method originally adopted for deducting breakage. Consequently it is alleged the amount which the complainant received was thirty-five cents less than the amount which he should have received if the computation had been made by the method approved by this court.

The complainant's bill further alleges that during the period that the defendant computed breakage by the method originally adopted, he made more than 250 other successful bets for which he was paid amounts computed by the defendant's original method, which resulted in substantial financial loss to him. It is also alleged that there were 50,000 other successful bettors during the period that the defendants deducted breakage by the original method; that the number of successful bettors who cashed winning tickets during said period that the defendant deducted break-

age by the original method was more than 800,000; and that the amount which the Delaware Steeplechase and Race Association illegally retained as breakage, and still retains, from the various successful bettors is approximately $200,-000.

The contention is made that the appellee was greatly benefited during the years that it deducted breakage by the original method, and that the successful bettors during that period were deprived of a large sum of money; that the number of persons who were thus deprived of a part of their winnings, is so numerous that it is impracticable for them all to apear before the court, and that appellant is suing on behalf of himself and the entire class.

The appellant prays that an equitable lien be declared to exist in favor of himself and all other successful bettors, for the sums illegally retained by the appellee under its original method of computation, and that said lien be enforced upon the appellee's assets.

And further prays that the said appellee be ordered to pay the total amount found to be due said appellant and all other successful bettors to a receiver to be appointed by the Chancellor, for distribution among all of the persons entitled thereto as above described. Appellee demurred to the bill on the ground that the facts therein set forth do not show that the appellant is entitled to equitable relief; and upon the further ground that it does appear that any claim which the complainant may have had is now barred by the statute of limitations.

The main argument relied upon by the appellant, is that the acts of those persons who attended the race meetings held by the appellee within the inclosure provided for that purpose, consisting of making bets by contributing to pools on the various races, and cashing their bets when they were successful, constituted a relationship of trustee and *cestui que trust*. The contention is made that the pool cre-

ated by those who bet upon each race is a trust fund of which the appellee is trustee, and that it is the duty of the appellee, as such trustee, to distribute said trust fund *pro rata,* among the successful bettors or contributors to each pool after deducting the commissions and breakage to which it is entitled.

Many definitions of trusts are relied upon by the appellant and authorities therefor cited, but not any of them are broad enough to cover the conditions which we are required to pass upon in this case. It is generally recognized that where title to property is held by one person for the benefit of another a trust is created. A trustee need not have the legal title to the subject matter of the trust, but he must have something more than a mere possessory interest. *Scott on Trusts, Vol.* 1, *page* 36, *Sec.* 2.6.

The following quotation from 1 *Scott on Trusts, Sec.* 2.3, *page* 32, referred to by the Chancellor in his opinion is so appropriate that I take the liberty of repeating it here.

"Probably no legal term can be defined with perfect accuracy so as to include all that is intended to be included and to exclude everything else. * * *

"Even if it were possible to frame an exact definition of a legal concept the definition would not be of great practical value. A definition cannot properly be used as though it were a major premise so that rules governing conduct can be deduced from it. Our law, at least, has not grown in that way. When rules have been arrived at from other sources, it may be possible to attempt to frame a definition. But the definition results from the rules, and not the rule from the definition."

No definition has been called to our attention which is comparable to the situation which exists when a bet is made on a horse race under the pari-mutuel system.

The statute above referred to under which the appellee gets its authority to conduct race meetings, authorizes it to "sell pools by the use of pari-mutuel machines or totalizators." Any transaction in which the authority to sell is

exercised suggests that the relationship between the parties to the sale is in the nature of a contract and not one of trustee and *cestui que trust*.

The action brought by this appellant in the Superior Court in New Castle County, to recover the additional amount which he claimed to be due him as breakage, practically admitted that relationship created between him and the appellee by his bet was one of contract. This view is supported by the language of Chief Justice Layton in the case before the Superior Court.

"Whatever the defendant may have offered, and whatever the plaintiff may have tacitly accepted, with respect to the method of computing 'breakage', did not constitute the contract, for that was written into the contract by the force of the statute."

And he further stated:

"The contract between the parties was governed by the statute." *Wise vs. Delaware Steeplechase & Race Association, supra* [2 *Terry* 182, 18 *A.* 2d 423].

When a person attending a race meeting held in the enclosure provided by the appellee for that purpose, desires to make a bet on any race, he goes to the window provided for the type of bet which he desires to make, announces the number of the horse upon which he desires to bet and gives the amount of his bet to the person at said window; as evidence of his said bet he receives a ticket from an automatic vending machine operated by said person at the window. He is not required to announce his name and no record is made of his bet other than that kept by the automatic vending machine from which he receives his ticket. If the horse upon which he bet wins, he takes his ticket to a window provided for the payment of winning tickets of the type which he holds, and receives from the person at said window, the amount found to be due him by the pari-mutuel machine or totalizator and shown on the board provided for that purpose. Said amount is paid to him immediately upon the presentation of his ticket. Here again he is not

required to give his name or state any facts or circumstances in connection with the transaction.

In case he fails to present his winning ticket the Delaware Steeplechase and Race Association has no way of knowing who is the holder of said ticket, or to whom the amount due thereon belongs. To say that a trust estate is created under conditions as above described would be going further than we have known any decided case to go.

In *City of Louisville v. Churchill Downs*, 267 *Ky.* 339, 102 *S.W.2d* 10, 13, it was held, "that the ticket buyers used the machine as an aid to their betting; hence the balance of 90 per cent of the entire sum belonged to the bettors. It is held by the proprietor as a bailee or agent abiding the event of the betting contracts." In *McCall v. State*, 18 *Ariz.* 408, 161 *P.* 893, *Ann.Cas.* 1918*A*, 168, one who received and recorded bets on a horse race by a pari-mutuel machine was held to be a stake holder. In *Pompano Horse Club v. State*, 93 *Fla.* 415, 111 *So.* 801, 812, 52 *A.L.R.* 51, where the betting was not conducted by a pari-mutuel machine or totalizator, but in a manner similar thereto, it was said, "in the plan before us, the corporate appellant is a custodian or depository of money staked, bet, or wagered on the result of a contest of speed between horses and the skill of their jockeys."

It is true that appellant was not paid the full amount to which he was entitled on his successful $10 bet, but he has already learned that he has a remedy at law for damages.

We are unable to hold that the balance to which the appellant is entitled is held by the appellee as trustee.

The argument was also made by the appellant that his bill should be sustained on the theory of preventing a multiplicity of actions at law.

There is no doubt that a court of equity will intervene

and entertain bills to prevent a multiplicity of actions at law, where the facts under consideration warrant it. *Field v. Layton & Layton,* 16 *Del. Ch.* 135, 141 *A.* 818. Appellant's claim for relief on this ground is based upon the theory, that the appellee should be required to pay over to someone as trustee, the total amount of excessive breakage retained in all pools, in all races, from 1937 to 1940 inclusive. Admitting for the sake of the argument that the bettors in each pool created an express trust, it nowhere appears how many pools there were or the amount of each pool. Appellant contends that he was a successful bettor in more than 250 pools, but he does not state the amount of his contribution in said pools or the total amount thereof. It is alleged that the exact number of successful bets during the period from 1937 to 1940 inclusive is unknown, but that they amounted to approximately 50,000; also that the exact number of winning tickets cashed by successful bettors during said period above referred is unknown, but that they are believed to be in excess of 800,000. Nowhere are we told who the 50,000 successful bettors are, the horses upon which the bets were made, or the amounts of the various 800,000 winning tickets. Nor is the amount of the breakage unlawfully retained on any of the various 800,000 winning tickets set forth. The appellee is not required to keep a record of the name of each bettor, the amount of each bet or the breakage deducted by it in connection therewith.

How then can the appellant prosecute an action on behalf of persons whose names he does not know, or has no knowledge of the amounts to which they are entitled?

The only bet which the appellant describes with any particularity is his own ten-dollar bet on "Maewhisk," and he has already been told by this court that the additional amount which he claims to be due him as breakage, can be recovered by an action at law. We have in this case, the suggestion that there might be a number of separate claims against the same party, namely the Race Association, all

arising from the same cause, under facts somewhat similar and governed by the same rules of law, which is one of four classes of cases recognized in *Field v. Layton & Layton, supra,* in which bills to prevent a multiplicity of suits fall. The difference in facts being, that each bet constituted a separate contract or undertaking between the bettor and the Race Association. But the names of all of the supposed claimants are unknown except that of the appellant, likewise the amount of each supposed claim except that of the appellant is unknown. How can the Chancellor grant relief to parties whose names are not only unknown, but the amounts of whose claims are unknown?

Assuming that this court should hold that the additional amount to which the alleged successful bettors are entitled on their bets during the period from 1937 to 1940 inclusive, constituted a trust fund in the hands of the appellee, how could it ever be determined who were the persons entitled thereto, or the amount to which they were entitled? Likewise assuming that it should be decided that the appellant's suit was proper to prevent a multiplicity of suits, how could it be determined who the alleged claimants were or the amount of their alleged claims?

So far as the camplainant's bill is concerned there is no way of determining the names of the successful bettors, therefore what would ultimately be done with the money?

We are not aware of any reason why the Chancellor should compel the appellee to take a course which cannot be carried through to a sucessful conclusion.

The case of *Equitable Guarantee & Trust Co. v. Donahoe,* 8 *Del. Ch.* 422, 435, 45 *A.* 583, 587, has an important bearing on the case under consideration. There a bill was filed to restrain the collection of a tax from the complainant, on the ground of the unconstitutionality of the statute under which it was levied; the reason given being that in its capacity as trustee or guardian it held a large number of estates

and might be subjected to a multiplicity of suits at law. In denying the remedy the Chancellor said " 'it is real and not imaginary suits, it is probable and not possible danger of multiplicity of suits, that will warrant the assumption of jurisdiction on that ground.' " The Chancellor further said, the attempt to collect a single tax from the complainant in its fiduciary capacity would enable it to avail itself of the legal remedy in the Superior Court, and that he would not "impute to the state, or its officers acting for it and in its name, a litigious and vindictive spirit, or a purpose needlessly to vex and harass the citizen."

In the case brought by the appellant in the Superior Court it was decided, and affirmed by this court, that he was entitled to the additional amount which he claimed on his successful bet. Is there any reason why we should assume that the Race Association would refuse to pay the additional amount due other successful bettors who present their claims, provided that said claims are not now barred by the statute of limitations.

We find nothing in this case which brings it within the doctrine laid down by this court in *Bovay v. H. M. Byllesby & Co.*, 27 *Del. Ch.* 381, 38 *A.* 2d 808.

The further contention is made that the appellant cannot enforce his own claim because it is barred by the statute of limitations. There can be no doubt that the balance which he claims to be due on the more than 250 successful bets mentioned in the bill cannot be collected because nothing is said about the amount of said bets or the time when they were made. The only bet on which he gives any specific information, is his $10 successful bet on "Maewhisk" which was made on July 1, 1939. As to this bet, he alleges that after the race he was paid the sum of $18.50 upon the surrender of his ticket at the window provided by the appellee for successful bets of that character, whereas he should have been paid the sum of $18.85. But as stated above this bet was made on July 1, 1939, and the present suit was not

commenced until December 22, 1943, more than three years thereafter. *Paragraph 5129, Section 6, of the Revised Code of 1935,* provides that no action of assumpsit or debt not founded upon a record or specialty, shall be brought after the expiration of three years from the time such cause of action accrued. Thus it appears that a suit at law for the recovery of the balance due on said successful $10 bet is barred by the statute. For the same reason recovery will be denied in the Court of Chancery, because of the well known principle that equity follows the law. Complainant argues that there was no demand for the additional amount due on his said bet until his bill was filed in this cause, consequently the statute did not begin to run until that time. We cannot agree with this contention. The presentation of this ticket after the race, at the window provided for the payment of tickets of that character, constituted a demand for the whole amount due thereon and his cause of action accrued at that time. It was not necessary for him to make a specific demand for the particular amount which he now claims.

Complainant makes the additional argument, that the appellee's method of computing breakage was wrong, until it was determined by the court, and therefore, the statute did not begin to run until that time.

Neither can we agree with that argument. There is no showing in this case of fraud or improper conduct as in the case of *Bovay v. H. M. Byllesby & Co.,* 27 *Del. Ch.* 381, 38 *A.* 2d 808. In computing breakage prior to this court's decision regulating it, the appellee did nothing more than make an improper interpretation of the law.

The case of *Ballin v. Los Angeles County Fair,* 43 *Cal. App. 2d Supp.* 884 111 *P.* 2d 753, 756, is the only case we have been able to find in which the question involved in this case was decided. In that case the plaintiff demanded an accounting on behalf on numerous other persons who had made successful wagers at defendant's race track, and sought to recover for them the amount due them by reason

of the defendant's erroneous method of figuring breakage. The court said "we have carefully considered these allegations and find them entirely insufficient to show a case in which the law would authorize the bringing of such a representative suit by plaintiff or entitle him to an accounting."

For the reasons set forth we are of the opinion that the appellant cannot enforce his own suit against the appellee, and is not in a position to bring a representative suit on behalf of the other successful bettors referred to in his bill.

The opinion of the Chancellor is affirmed.