HELMERICH & PAYNE, a Delaware corporation (formerly White Eagle Oil Co., a Delaware corporation), Appellant, v. COLORADO INTERSTATE GAS COMPANY, a Delaware corporation, Appellee.

(*December* 3, 1962)

SOUTHERLAND, Chief Justice, and WOLCOTT and TERRY, J. J., sitting.

*James M. Tunnell, Jr.*, and *Andrew B. Kirkpatrick, Jr.* (of Morris, Nichols, Arsht and Tunnell) for appellant.

*Howard L. Williams* and *Henry N. Herndon, Jr.* (of Morris, James, Hitchens and Williams) for appellee.

Supreme Court of the State of Delaware, No. 27, 1962.

SOUTHERLAND, C. J. (for a majority of the Court):

In the court below Colorado Interstate Gas Company filed an action at law against Helmerich & Payne, Inc., to recover alleged overpayments for natural gas purchased by Colorado and paid for by Helmerich.

The pertinent facts are these:

Colorado is an interstate pipeline company; Helmerich is a producer of natural gas. In 1947 and 1948 they entered into three contracts for the purchase of gas by Colorado from Helmerich. The price fixed was 6c per 1000 cubic feet measured at specified presssures.

A series of orders regulating the production and sale of natural gas in Kansas was adopted by the Kansas State Corporation Commission.

The order of March 1, 1949, undertook to fix a minimum price for gas at the well-head of 8c per 1000 cubic feet. Under the Kansas statutes, violations of the order entailed criminal penalties.

Colorado paid the increased price without protest, beginning March 1, 1949.

On June 7, 1954, in *Phillips Petroleum Co. v. Wisconsin*, 347 U. S. 672, 74 S. Ct. 794, 98 L. Ed. 1035, the Supreme Court of the United States, reversing holdings of the Federal Power Commission, held that all wholesale sales of natural gas in interstate commerce were subject to the jurisdiction of that commission. On April 11, 1955, an order of the Oklahoma Corporation Commission fixing a minimum price for natural gas was held invalid. (*National Gas Pipeline Co. v. Panoma Corporation*, 349 U. S. 44, 75 S. Ct. 578, 99 L. Ed.

866), and on January 20, 1958, an eleven-cent minimum price order of the Kansas Commission was held invalid. *Cities Service Gas Co. v. State Corporation Commission*, 355 U. S. 391, 78 S. Ct. 381, 2 L. Ed. 2d 355.

Colorado then demanded that Helmerich repay to it $388,307.42, representing the total overpayments made by it to Helmerich under the invalid orders. Helmerich refused and Colorado brought suit. The complaint alleged two grounds for recovery: (1) duress, and (2) mistake of law.

Helmerich moved to dismiss. It argued (1) no relief may be granted for a mistake of law; (2) the charge of duress is overridden by the "admission" in the complaint that the payments were attributable to a mistake of law, and duress cannot be treated as a separate ground of recovery; and (3) that the action is barred by the Delaware three-year statute of limitations. 10 Del. C. § 8106.

The trial judge held, as we read his opinion, (1) that the effect of the allegation of duress was not vitiated by the allegation of mistake of law and could stand alone; (2) that the issue of duress presented a question of fact to be determined later; and (3) that the statue of limitations did not begin to run until January 20, 1958, when the Kansas Commission eleven-cent order was officially voided. Helmerich appeals and renews the arguments made below.

The issue whether mistake of law may be a ground for recovery is, however, no longer before us. After the case came here Colorado amended its complaint by striking the allegation of mistake of law. By special order this Court, *sua sponte*, ordered the record supplemented to show this fact, since the issue had become moot.

(We pause to observe that the supplementation of the record with matters occurring after appeal is quite unusual, and the order here should not be taken as establishing a precedent.)

There are therefore before us questions (2) and (3) only:

First, may the allegation of duress stand alone as a separate cause of action? The trial judge held that it could, and we agree. The supposed inconsistency with the allegation of mistake is of no consequence.

Second, is the action barred by the statute of limitations? This is the important question before us. Its answer depends upon the date of the "accruing of the cause of action." 10 Del. C. § 8106, above cited.

When Colorado made the first payment to Helmerich in 1949 under the Kansas minimum price regulation, its claim to recover, if any (argues Helmerich), arose at once; and in like manner it could have sued for the recovery of each subsequent payment as soon as it was made. Helmerich cites and relies upon *Wise v. Delaware Steeplechase & Race Association*, 28 Del. Ch. 161, 39 A. 2d 212, aff'd 28 Del. Ch. 532, 45 A. 2d 547, 165 A. L. R. 830. That case involved an erroneous interpretation of "breakage" as defined in the Delaware law regulating pari-mutuel betting at race-tracks. It does not control here, for it does not present any question of duress. In this case Colorado was faced with the choice of compliance or noncompliance with the Commission order. If it had chosen noncompliance, it would have run the risk of severe criminal penalties. Hence, it replies, it chose compliance, under duress or business compulsion. In such a case, it argues, any cause of action to recover the payments illegally received by Helmerich did not arise until the unconstitutionality of the Kansas orders had been established.

The court below upheld Colorado's contention, and we think it was right. The common law rule that voluntary payments, though not legally due, are not recoverable, has in modern times been relaxed in cases of "business compulsion" or duress. See 75 A. L. R. 658. In such cases the pay-

ments are held to be involuntary. And it is also held that if such duress exists, the cause of action to recover such payments does not arise until the duress ceases. See 121 A. L. R. 1294.

The reversal of the Federal Power Commission's interpretation of the Natural Gas Act, and the payment for natural gas at rates specified by state regulations in excess of contract prices, have resulted, as is natural, in a large number of suits by pipeline companies seeking reimbursement from producers. All, or nearly all, of these suits have been successful. The courts have taken the view that the payments were involuntary, and that the cause of action to recover them did not accrue until the final determination of the invalidity of the State Commissions' price orders. See *Natural Gas Pipeline Co. v. Harrington*, D. C. Tex., 139 F. Supp. 452, aff'd 246 F. 915; *Cities Service Gas Co. v. United Producing Co.* (U. S. D. Ct. N. D. Okla.) C. A. #4554 (unreported); *Northern Natural Gas Co. v. Landon*, (U. S. D. C. Kans. Sept. 7, 1961) No. T-2166 (unreported).

The result appears to be in accord with the principles of equitable restitution, which we think should be applied here. The retention by Helmerich of the excess payments made under the Kansas order would be clearly unjust. Restatement, § 1.

In remanding the case to the Superior Court for trial we note that the issue of duress has not been decided. If Colorado fails to prove it, its case must fail; if it does prove it to the satisfaction of the court (or the jury, if the issue goes to the jury), its claim is not barred by the statute of limitations.

The order of the Superior Court is affirmed.

TERRY, J. (concurring).

I concur in the result. In doing so, however, I am con-

strained to set forth the reasons which do not permit me to join in the majority opinion.

My difficulty arises with the treatment which my associates accord the defense of the Statute of Limitations. In all other respects I am in agreement with the majority. I cannot, however, subscribe to a decision that would give plaintiff its day in court by passing over the question of whether the Statute of Limitations has run against plaintiff until the trial of the issues proves the existence of duress. As I understand the opinion, duress tolls the Statue of Limitations until such duress is removed. The cases at 75 A. L. R. 658 and 121 A. L. R. 1294, relied upon by the majority, are to that effect. Those decisions, however, are in no way factually related to the issues before us. Furthermore, they subscribe to a principle which has no bearing whatsoever on this case.

Plaintiff has alleged a type of duress which forced it to continue making overpayments. The allegation of duress thus goes to the recovery of those overpayments, not to the bringing of the action. The majority, however, rely on this latter type as the basis of their decision. Such a rationale is factually and legally unsupported by the issues before us. Thus I do not consider that duress, as pleaded in the complaint, affected plaintiff's right or will to bring an action to annul the Kansas price orders—thus creating its own cause of action.

In considering the question of whether the Statute of Limitations is a bar to recovery, the lower court applied the rule it established in *Cities Service v. Western Natural Gas Co.,* C. A. 674, 1958, Del. Super. Ct., where the learned Trial Judge ruled:

"In cases such as the one before the Court, a right of action does not accrue until the law which forbids the recovery is declared void."

The applicable Delaware Statute of Limitations provides in part:

" * * * no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of three years from the *accruing* of the cause of such action * * *." (Emphasis Supplied.) 10 Del. C. § 8106.

With regard to that statute, I consider the crux of the matter lies in the meaning of the phrase, "accruing of the cause of such action." One treatise discussed the question as follows:

"Statutes of Limitation commence to run against a cause of action from the time it accrues, or from the time when the holder thereof has the right to apply to the court for relief, and to commence proceedings to enforce his rights. The time when the cause of action has accrued within the Statute of Limitations means the time when plaintiff first became entitled to sue." Wood on Limitations, 4th Ed., 684 Sec. 122a.

The majority fails to note that a delineation exists between an action brought by plaintiff to void the Kansas price orders and an action in Delaware to obtain a recovery of the overpayments.

Assuming arguendo that plaintiff could have prevailed in a Delaware Court prior to *Cities Service v. State* (1958), *supra,* seeking recovery of the overpayments on federal constitutional grounds, my conclusion would still be the same. Such a suit would have then operated to create a previously non-existent cause of action in Delaware. Thus prior to such a ruling, no cause of action had accrued in this State to make the Statute of Limitations operative. If our courts on the other hand refused to hear this action and gave full

faith and credit to the Kansas price orders, an appeal to the Supreme Court of the United States might have likewise resulted in creating plaintiff's cause of action in Delaware. Plaintiff might also have attacked these price orders in Kansas or any other court of competent jursdiction. Be that as it may, until such an affirmative ruling was properly obtained, either annulling or refusing to enforce the application of the Kansas price orders, no cause of action had previously accrued in Delaware for the recovery of the overpayments. My point is, therefore, that until such a ruling was obtained, a cause of action had not accrued and plaintiff was under no duty to create it.

On that basis, the Statute of Limitations was inoperative until 1958 when the Kansas price orders were nullified by the Supreme Court of the United States in *Cities Service v. State* (1958), *supra*. It was then that plaintiff's cause of action to recover these overpayments accrued in Delaware and the Delaware Statute of Limitations became operative. In this respect, a New Jersey court has ruled:

"While the Statute of Limitations is one of repose and security, it was never intended to defeat a remedy before the right existed." *Hughes v. Eureka Flint & Spar Co.*, 20 N. J. Misc. 314, 26 A. 2d 567 (1939).

A cause of action accrues within the meaning of the Statute of Limitations when the plaintiff can first enter a court and rely on an existing right to sue forthwith. *New York & Pennsylvania Co. v. New York*, 300 Pa. 242, 150 A. 480 (1930).

Since we are in agreement that the plaintiff's cause of action accrued as a result of the Supreme Court's ruling in *Cities Service v. State* (1958), *supra*, the only question to be determined is whether plaintiff was under a legal duty prior to 1958 to bring an action in a court of competent jurisdiction for the purpose of setting aside the Kansas price

orders, thus establishing its cause of action to recover the overpayments. The defendant contends that such a duty existed on the plaintiff's part. There can be no question concerning the plaintiff's right to bring such an action. However, defendant has not cited any authority to show that plaintiff was required to create its cause of action and I would not impose one on it. With regard to the Statute of Limitations, the only duty upon a prospective litigant is that he institute his suit within the prescribed period once the cause of action has accrued.

Thus until the enforcement of a right is recognized in a Delaware court, the Delaware Statute of Limitations cannot run. The accrual of a cause of action is a prerequisite to its operation. Likewise, a competent decree invalidating, or refusing to enforce or recognize the Kansas price orders was a necessary concomitant to the accrual of plaintiff's cause of action in the case at bar.

I would therefore hold that no cause of action accrued in Delaware until the Kansas price orders were annulled in *Cities Service v. State* (1958). The question of duress, as posed by the majority, is thus obviated and the Court is not faced with the dilemma of projecting into the future a nebulous and erroneous factual situation which cannot sustain its theories.

The state of the present proceedings deserves note. This appeal comes to us on a motion to dismiss. As such, we are confronted with the question of whether the allegations of the complaint are sufficient to state a cause of action. Duress is present among the allegations, but I fail to perceive that it is anything more than an element relating to the recovery of the overpayments.

The majority opinion on the other hand interjects a type of duress which subverts the will of a plaintiff to bring an action to remove that duress. Plaintiff has certainly not made

any allegations to that effect, and I therefore cannot concur with a decision which is based on such non-existent duress.

There is an element of judicial restraint which, as part of the Rule of Law, requires us to consider only those issues that are properly before us. We should not anticipate questions which may develop at a later date—trying to decide them now by hinging the application of our judgments on their occurrence.